Peahson, J.
 

 The bill is filed by the executors of Lewis Bond, against the legatees. It sets out the will, and prays for a construction in reference to several matters specified, and submits to dispose of the, fund under the direction of the Court. It also prays for the advice and opinion of the Court, in reference to several other matters.
 

 The questions of construction, although furnishing proper grounds for the application, are not very difficult of solution; and the case would have been disposed of at last term, but for the several matters in reference
 
 tp
 
 which, the
 
 opinion and advice of
 
 the Court, (as distinguished from its direction,) is asked. The subject was thus made complicated, and an
 
 advisari
 
 was taken, for the purpose of ascertaining the full scope and object of the bill, and of defining the jurisdiction of a Court of Equity, in regard to such matters.
 

 Besides asking for a construction of the several parts of the will, which is necessary for the present action of the Court, a construction is asked for on various other parts, in reference to the past conduct of the executors, and to their future rights, and the future
 
 *15
 
 rights of the legatees — the bill proceeding on the assumption, that an executor has a right to ask for the opinion and advice of the Court, as to any matter, past, pesent or future, provided it has, does, or may grow out of the construction of the will, upon the general idea, that a Court of Equity has a sweeping jurisdiction in reference to the construction of wills.
 

 This idea is an erroneous one. The jurisdiction, in matters of construction, is limited to such as are necessary for the present action of the Court, and upon which it may enter a decree, or direction in the nature of a decree. The Court cannot, for instance, entertain a bill for the construction of a devise. Devisees claim by purchase under the devise, as a conveyance. Their rights are purely legal, and must be adjudicated by the Courts of law. A Court of Equity can only take j urisdiction when trusts are involved, or when devises and legacies are so blended, and dependent on each other, as to make it necessary to construe the whole, in order to ascertain the legacies; in which case, the Court having a jurisdiction in regard to the legacies, takes jurisdiction over all other matters necessary for its exercise.
 

 The power of a Court of Equity to decree the payment of legacies is a well settled and ancient jurisdiction, assumed on the ground that the Ecclesiastical Court cannot take the accounts usually involved, or enforce its decrees. The power to entertain bills of interpleader is also a well settled and ancient jurisdiction, assumed in cases of conflicting trusts, on the ground that, as the Court has the exclusive control of trustees, it is right to allow them, where there are conflicting claims, to bring in the fund, have the claims adjusted, and the fund disposed of under its decree, so as to save the trustee from responsibility and future litigation; and assumed, in cases of conflicting legal claims, for the protection of any person, of whom several claim the thing, debt, or duty, (provided he has incurred no independent liability to either, and has no interest,) on the broad ground of protecting a mere
 
 stake-hplder,
 
 and because this principle, although always recognized at common law, is excluded from practical application in the Courts of law, by their technical forms of pleading.
 

 From these two powers is clearly derived jurisdiction to entertain a bill, at the instance of executors, for the purpose of constru
 
 *16
 
 ing wills, fixing the legacies, and having them paid under the direction of the Court. This jurisdiction has been long exercised, and, in fact, is nothing more than an extension of the doctrine of interpleader to the case of executors and legatees, under the power of the Court to decree payment of legacies — treating the executor as a trustee or stake-holder of a fund over which the Court .has control. The jurisdiction is extended even further, and in cases of difficult and complicated accounts, a Court of Equity will have the accounts taken, the debts ascertained, and the assets, legal as well as equitable, paid over to the creditors under its direction — in these- cases, the ingredient of account, (a very extensive head of equity jurisdiction,) being also involved.
 

 We can see no ground, upon which to base a jurisdiction, to allow executors to ask the opinion of the Court as to the future rights of a legatee; — for instance,
 
 “
 
 Who will be entitled, when a life estate expires?” — “When property is given to one for life, with a limitation over, does the first taker have the entire interest by the rule in Shelly’s case?” — or, “ What would be the consequence of a supposed state of facts that may hereafter arise?” True, these are matters of construction, but the questions cannot now be presented, so as to be settled by a decree. A declaration of opinion would be merely in the abstract, until existing rights come in conflict, so as to give the Court a subject to act on.
 

 Again: we can see no ground for the jurisdiction to give an opinion to executors as to whether their past conduct was right, if they chose to act. It is then too late to ask the opinion of the Court, because the Court can then make no decree in the premises. Such a jurisdiction is directly excluded by the doctrine of interpleader. It is well settled, if the stakeholder pays over the fund to one of the parties, he comes too late; for he is not then able to put the fund hr the power of the Court, so that it can be disposed of under its directions.
 

 Again: we can see no ground for the jurisdiction to give advice to an executor in regard to his future conduct or his future rights. He must get such advice from a lawyer; but he can only get the advice (more properly, the
 
 direction)
 
 of the Court, when its present action is invoked in regard to something to be done under its decree.
 

 
 *17
 
 These conclusions are almost self-evident, and are necessary* consequents of the fact, that the Court can only act by its decree, which must be made on an existing state of facts, so as to be the action of the Court, as distinguished from an abstract opinion. It is therefore unnecessary to pursue the discussion further, especially as no authority,
 
 dictum
 
 or intimation to the contrary was cited. It was considered proper to announce them, and to trace the limits of the jurisdiction of the Court, in order to prevent the present bill from being drawn into precedent, whereby bills may become unnecessarily complicated, by the introduction of matters foreign to the jurisdiction.
 

 1. Mrs. Bond is not entitled to the note taken by the testator as the price of the negro girl, Maria. The note is not embraced by the terms of the gift; it was not
 
 acquired by the
 
 marriage. The negro is not embraced; for, although acquired by the marriage, she was not a
 
 part of his estate at the time of his death.
 
 It is said that, as the note was taken in the place of the negro, it ought to pass in her stead. There is no ground upon which the gift can have this effect. The words do not include the negro. But suppose she was included, the legacy was adeemed as to her by the subsequent sale, and it is the ordinary case of a testator selling an article given by his will, without any direction that the price should be substituted. The proviso, that “his estate is not to be liable for any income, rents, profits or interests arising or accruing from the property acquired by the marriage,” can not have this effect. They were obviously inserted, from abundance of caution, under a vague apprehension, (we suppose,) of liability arising from what may have passed between the parties.
 

 2. The same reasons apply, with additional force, to exclude Mrs. Bond’s claim to the price of the negro, sold before tire making of the will.
 

 3. The same reasons apply to exclude her claim to the sums for which certain of the negroes were hired for the year 1851. The testator had disposed of apart of his estate in these negroes, to wit, his interest for one year; and the legacy was adeemed
 
 fro
 
 tanto, by this partial disposition, in the same way as if there had been a sale out and out. The widow takes them, subject to the
 
 *18
 
 right of the persons who had hired them. But she is entitled to the value of the labor of the slaves not hired, for the residue of the year. As to them, there is no ademption, either partial or absolute, and the will taires effect from the death of the testator. There must be an account to ascertain this amount, after deducting the expense of keeping such as may have been chargeable, unless the parties agree on it.
 

 4. Mrs. Bond is entitled to all of the furniture, except one carpet, purchased after the marriage, and before the execution of the will; but she is not entitled to any part of that which was purchased afterwards. As to that purchased soon after the marriage, no question is made. The words “all the furniture purchased
 
 on
 
 our marriage,” taken by themselves, would seem to mean such as were purchased about the time of the marriage, by way of outfit made necessary by that occurrence; but they may mean such as was purchased in consequence of “ our marriage,” and so include the second lot purchased some time af-terwards, in addition, or by way of supplement, to the,first lot— that turning out insufficient. The doubt, however, is removed by the additional words, “ known as our
 
 new
 
 furniture.”
 
 New
 
 is used in opposition to, and to distinguish it from, the
 
 old
 
 furniture, which tire parties had before their marriage; and both lots of the new furniture are evident^ embraced. The third lot, purchased after the execution of the will, is not included. A will takes effect at the death of the testator, and when general words are used, they are presumed to have reference to that time ; because it is natural that the testator should be looking, and speak in reference, to the state of things when the will is to go into operation; e.,
 
 g.,
 
 a legacy “to the children of A.,” or of “all my horses,” is presumed to have reference to the time of the testator’s death. But when particular words of description are used, so as to identifj*-a person or thing, the words necessarily have reference to the time of using them; for the fact of identification is a present act, inconsistent with the idea of a reference to a future state of things, and must refer to the time when it is made;
 
 e., g.,
 
 a legacy to “ John, the son of A.,” or of “ my horse, Jackson,”— if John or Jackson die, although the testator should have another son and name him John, or the testator should purchase another
 
 *19
 
 horse and name him Jackson, this John or Jackson would not be the person or the horse meant; for the inference that he was speaking in reference to the state of things, as they might exist at the time when the gift was to take effect, is excluded by the fact of identification.
 
 Pearson
 
 v. Taylor, 4 Dev. & Bat.,
 
 6
 
 0—Van
 
 hook
 
 v.
 
 Vanhook,
 
 3 Ire. Eq., 581. The testator in this case has identified the furniture, to wit,
 
 “
 
 that purchased on, (or in consequence of,) our marriage, known as our new furniture, (giving it a name,) except one carpet, there being two new carpets:” so that he evidently had in his mind a particular
 
 corpus
 
 existing at. that time, and was speaking in reference to the then state of things, and had no reference to any additions which he might afterwards make, or to a future state of things.
 

 5. Dr. Rascoe is bound to pay the balance due on his note. The mere fact of a legacy to a debtor has no tendency to show an intention to release the debt.
 

 6. Mrs. Ashburn is entitled both to the legacy and the note. The mere fact of a legacy to a creditor has no tendency to shew an intention to make the legacy dependent upon a release of the debt.
 

 7. The allegation that the property was delivered,
 
 subject to the decision of the point,
 
 saves this interrogatory from the objection, that after a thing is done, it is too late to come for directions. We assume that the legatees took as mere bailees, the executors withholding their assent, and still having control of the property. The object is to present the question, Are these legacies liable t© contribute to the payment of the debts? There is no room for doubt. The legacies to Mrs. Bond and Dr. Rascoe are specific, and the other property is given expressly as a residue, in trust to pay debts, &c. The legacy to Mrs. Ashburn is also expressly exempted from liability to contribute to the payment of debts, by the words
 
 u after paying my debts and providing for my sister as above, all the remaining property,” Sfc.
 

 8. The executors have delivered over to Mrs. Ashburn the land, negroes, stock, &c., at her election. This property is now amply sufficient for her support; but they suggest that by possibility, from negligence or accident, it may not, at some future time, yield a support; and the Court is asked whether, in refer
 
 *20
 
 ence to such future contingency, the executors have a right to require a release? Or has she a right to call on them, from time to time hereafter, as her necessities may require? If so, how are they to meet the exigencies ? The Court is not at liberty to answer, for two of the reasons above pointed out. If a release was necessary and proper, it should have been required before the property was delivered. After the thing is done, it is too late to ask for directions. Whether she may hereafter require further support, will depend .on casualties, bad seasons, sickness, death of negroes, loss of stock, and so on, which may never occur. The question might have been put into a shape requiring the present decision of the Court, by making a suggestion that Mrs. Ashbum set up such a claim, and it was necessary to have it passed upon, so as to provide a fund ; but there is no such suggestion — probably because she makes no such claim, and has no expectation or belief that she will ever hereafter come to want; or, if she does, that she will have a right to make a further requisition, inasmuch as she had made her election to take the property, and not its amount in money.
 

 9. The testator, after directing the sale of a tract of land for the payment of his debts, gives the executors a wide discretion, either to sell enough of the personal property to pay the balance of his debts, or retain the property until such balance can be paid out of the rents and profits. They have sold the land, and have exercised their discretion, by selling all the personal property ex* cept the negroes, and hiring them out for the year 1852, for an amount sufficient to pay the residue of the debts. They now suggest that the unadvanced children complain of this exercise of discretion^ because it favors the others who are to pay no interest until the division, and
 
 ask
 
 — u Is the time when all the debts are
 
 a
 
 or can be paid, at the end of this year, the proper time to di5
 
 c
 
 vide ? Qr‘, were your orators under obligations to divide sooner ?
 
 <e
 
 Or, have they power, without liability, to continue the estate in ¡' hand longer than the present year ”? The first two questions come too late. The executors have exercised their discretion: tire thing is done. The third question is obviously unnecessary, for there is no suggestion, even of a future event, which will require a longer postponement of the division.
 

 
 *21
 
 10. “ Can the executors make the valuation themselves ? Can
 
 “
 
 they designate others to do it? Can they have it done under a
 
 “
 
 decree of Court? If so, they prefer the latter, when the division “shall be made.” The valuation, directed by the testator, was to be made as soon after his death as could be done conveniently. This has not been done ; and the valuation, contemplated by this question, seems to be in reference to the final division. If so, there is no objection to its being made under an order of Court.; and the parties are at liberty to name fit persons as Commissioners, and to move for further directions in reference to the division..
 

 11. The $1,500 draws interest from the death of the testator until possession is given of the land. It is a debt which fell due at his death, and of course draws interest until it is satisfied in the manner provided.
 

 12. The point is not stated with clearness. It is this : the other legatees admit that Mrs. Bond and those in remainder are entitled to the specific tract of land, and one seventh part of the personal property, in case all of the advancements are accounted for ; one sixth part, if one refuses ; one fifth part, if two, and so on; but deny that the advancements are to be taken into the account for her benefit. She insists that she is entitled to the benefit of the advancements, and, as an unadvanced legatee, is entitled to a share of land and personal property both, equal to that, of her co-legatees ; or, if she gets no more of the real estate than the land devised to her, that she is entitled to the benefit of the advancements in tbe division of the personal estate
 
 -y
 
 and, in case all the advancements are accounted for, the amount is to be added to the personal estate, and she takes one seventh part of the whole fund ; in case one refuses to bring in his advancement, then she taires one sixth part of the fund, and so on.
 

 By the sixth clause, which is subject to future clauses, the residue of the estate, real and personal, is given to his executors for the benefit of his wife and six of his children 5 but the testator provides that
 
 “
 
 the benefit of this clause is not to be had by any one
 
 “
 
 of the above seven named legatees, until he or she shall ac- “ count for the advancements which he or she has received from
 
 “
 
 me — my object being that those of the above seven legatees, “who have been advanced, are to receive nothing, until those of
 
 *22
 

 u
 
 them who have not been advanced shall receive enough to umake them equal to those advanced respectively.” He then specifies the amounts which have been advanced to four of them, and says,
 
 to his wife, to
 
 Lewis, and to James, he has made no advancements. He provides that no interest shall be charged on the advancements until the division, and then repeats, “ the said
 
 t{
 
 four legatees are respectively to account for their said advance-;í ments, before they receive any part of my estate, whether real
 
 ■c
 
 or personal; and should any one or more of the four refuse to
 
 -e
 
 account, the others are to have the whole benefit of this clause, in the manner hereinafter provided for.” If this clause stood alone, there could be no doubt that Mrs. Bond was entitled to a share of the real and personal 'estate both, equal to that of her co-legatees ; but in regard to the real estate, it is essentially modified. The land is all disposed of by specific devises. By the 9th clause, he gives certain land to Lewis and James, two of his children. By the 10th, he gives land to Esther, and by the 11th lie gives land, subject to the life estate of Mrs. Ashbum, to Lucinda, who are two of the children. By the 12th, he gives a tract of land to his wife, and by the 13th he provides that, as the shares of land given to Lewis, James and Esther are unequal in value, the difference shall be made up in the division of the personal estate,
 
 ci
 
 So
 
 that of land and negroes both,
 
 these four of my legatees shall receive an equal' amount, after the advance-
 
 u
 
 ments to Esther and Lucinda are accounted for.” The substance of this is, that out of the shares which each of these receive in the division of the negroes, those whose land is most valuable shall pay over to the others, so as to make them equal, both in regard to land and negroes. There is no such provision by which to make the wife’s share equal in regard to land, and as the 6th clause is subject to be controlled by the subsequent clauses, she must be content with the tract of land devised to her.
 

 The remaining question is, whether the 6th clause is modified also in regard to the personal estate. The intention to modify, announced in this clause, and the fact of having modified it, announced in the 13th clause, may be satisfied by the modifications in regard to the land. It is said this clause is modified by the 12th clause in which, after giving his wife a tract of land, he
 
 *23
 
 adds,
 
 “
 
 and also one-seventh part of the negroes and other personal property mentioned in the 6th clause of this will, in case all the advancements should be accounted for, and one-sixth part, in case any one should refuse and not account for his or her advancement, and one-fifth part, in case any two should not account, and so on for the whole four.” We are at a loss to perceive what modification this makes. If he had stopped, after giving her one-seventh part of the negroes and other personal property, the 6th clause would have been greatly modified; but as he adds,
 
 “ in case all four account for their advancements, and one-sixth part, in case one refuses, and so on,”
 
 his intention manifestly is, to give her the benefit of the advancements which are accounted for. How are advancements accounted for ? By adding the amount to the value of the estate in hand, and dividing the whole by the number of the parties. Thus the amount of one share is found. The party advanced keeps his advancement, and takes enough of the estate to malee up a share — leaving each of tire others a like share. Here, for instance, if all bring their advancements into the account, the amount of the advancements will be added to the value of the negroes, and the whole be divided by seven. Mrs. Bond and the two unadvanced children will each take one-seventh part, so ascertained, and the four advanced children will take so many of the negroes as, added to their advancements, will also give to each of them one-seventli part of the whole. And thus, Mrs. Bond, in the words of the testator, will receive one-seventh part of the negroes and other personal property, in case all of the advancements are accounted for and so on. Again: if none of the advancements are accounted for, it is clear Mrs. Bond will be entitled to
 
 one-third
 
 of the personal estate. Why are the advancements required to be brought into the account? Can any reason be suggested why, whether a provision for a wife and her children shall be one-seventh or one-sixth and so on, or one-third of the estate in hand, should be made to depend upon the circumstance of the advancements being accounted for or not, unless that fact is to have some effect ? The proposition on the part of the children is, if all the advancements are accounted for, Mrs. Bond takes only one-seventli part of the estate in hand,
 
 not counting the advance-
 
 
 *24
 

 merits:
 
 if none of the- advancements are accounted for, she is to have one-third, an amount double that of the former ! This is absurd. The advancements are to be accounted for, and yet are not to be taken into the account! The plain meaning and good sense of the thing is, if she has the benefit of the advancements to all four of the children, her share is to be one-seventh; if of the advancements to but three, her share is to be one-sixth, and so on; but if she has not the benefit of the advancements to any of them, her share is to be one-third; thus making an equality between- the three of the seven legatees not advanced, and such of the others as account for their advancements — such as refuse being presumed to be content witli what they have already received. So that, under the 12th clause, Mrs. Bond is entitled to the benefit of the advancements in the division of the personal estate; and taking into consideration that in the 6th clause the testator declares his object, in requiring the advancements to be accounted for, to be to put all of the
 
 seven named legatees
 
 on an equality, there is no further room for argument. (2.) This subdivision being an alternative, need not be 'noticed. (3.) The crops are given to the executors for the payment of debts, &c., under the general terms of the will. A .devisee claims by purchase under the will as by a conveyance, and consequently is entitled to the crop growing on the land at the death of the devisor, unless it be otherwise disposed of, expressly or by implication. In this case, there is a plain implication. The land is not given directly to Mrs. Bond, but with the other property, is given in the
 
 first place
 
 to the executors, who have a discretion to retain it until the debts are paid out of the rents; so it does not, as in ordinary cases, pass to the devisee at the death of the devisor. The discretion given to the executors to rent it out, necessarily includes a right to take the crop then growing, and apply it to the payment of debts. This is the purpose for which the land is first vested in them, and is afterwards to pass to the several devisees. Mrs. Bond not being entitled to the crop, it is unnecessary to consider the other branch of this subdivision.
 

 13. Daniel, although bom after the execution of the will, is provided for.
 
 So
 
 the case is not within the Act of Assembly, He and Henry are on the same footing, and take a remainder in
 
 *25
 
 the legacy given to their mother. The property is given
 
 “
 
 to her for life, and at
 
 her
 
 death, to go to such child or
 
 children
 
 as she
 
 has had
 
 by me who may then be living. ’ ’ The words ‘
 
 ‘
 
 has had by me ” do not refer to tire time of writing the will, but to the antecedent, “ at her death,” as also the word
 
 “
 
 then,” in the expression “who may then be living.” The word “ children ” shows that he expected his wife might have more children than Henry, and he intended them to share the remainder with him.We presume the reason for not giving his children by Mrs. Bond as much as his other children, is on account of the gift to. her of all the property acquired by their marriage.
 

 14. Do the cotton-gin and caipets, after the death of Mrs. Ash-burn, belong to the trustee of Lucinda Wheeler? This is a question, (suggested by the idea of these articles being attached to the land,) which may arise at her death; but it does not arise and cannot be presented now. We are not at liberty to give an opinion upon it, for the reasons above pointed out. There is nothing now for the Court to act on. Its opinion would be merely in the abstract and not binding, if the question ever should arise, which may never be the case, as the gin and carpet may be worn out and worthless before the lady’s death.
 

 15. (1.) The executors having put this property into the possession of Mrs. Ashbum, to be used by her for life, the interest in it, subject to a free use by her, is a part of the estate to be divided among the seven legatees named in the 6th clause. After the division, the executors will have nothing more to do with it. The party to whom it is allotted, if it should hereafter become necessary, may take measures to prevent the removal or destruction of such of it, as is not of a nature to be consumed by the use.
 
 Smith
 
 v.
 
 Barnum, 2
 
 Dev. Eq. 420.
 
 Jones
 
 v.
 
 Simmons,
 
 7 Ire. Eq. 178, does
 
 not
 
 conflict. In that case, a mixed and indiscriminate fund is given as a
 
 residue
 
 to one for life, with a limitation over ; and it is settled to be the duty of the executors in such cases to sell the property and pay the interest to the first taker during his life, keeping the principal for him to whom it is limited over, on the ground that this is the only mode in which the latter can be let into a fair participation of the testator’s bounty. This case differs in many particulars, and stands on its own peculiar
 
 *26
 
 circumstances.
 
 First,
 
 the funds, though mixed, is to be designated and allotted by the executors. Thus a specific nature is impressed on it, so as to distinguish it from a mere residue.
 
 Secondly,
 
 there is no limitation over, but the interest in such of the property as remains on hand at the death of the first taker, not being consumed by the use, is left to fall into the residue.
 
 Thirdly,
 
 the very object of the gift is, that Mrs. Ashburn may be supported by the
 
 me of the property.
 
 This object would be defeated by a sale.
 
 Fourthly,
 
 the testator gives an election, to take the property for life, or the value of the life estate in money. This eletion would be defeated by a sale.
 

 (2.) When the legacy of Mrs. Bond is delivered to her, the -assent to her legacy will be an assent to the remainder, and the executors will have nothing more to do with it.
 
 Smith
 
 v.
 
 Barnum,
 
 cited above.
 

 (3.) It will be in the power of the executors to have these questions decided, by instituting proper proceedings, when they wish to have a new trustee. They do not present the question to be now acted on, but intimate an intention at some future time to rid themselves of the burthen of acting longer as trustees for Mrs. Wheeler, by substituting some other person as trustee, and ask how they can do so with safety, and so on
 
 1
 
 For the reason above stated, the Court is not at liberty to answer these interrogatories.
 

 Per Curiam. Decree accordingly.