HUITIN, Chief-Justice
 

 After stating the pleadings and report as above, proceeded:
 

 The crops growing on the land, at the time of the testator’s.idcath, go to the executor as against the heir,but as between the executor and the devisee,the latter is entitled tjieiD, Thd devisee takes the land by the intention of the testator, with every thing on it, for as the devise car-vies the land against the heir, so it does the crop against ¿¡1C executor.! The rule is so strong, that if the devise
 
 *424
 
 be for life with remainder over, anil the first taker die before severance of the crop growing at the death of the testator, it goes over with the land to the remainder-man, in preference to the personal representative of the first taker.
 

 Here the testator died early in September 1825. Ho then left in the grainery, a smalt quantity of corn, and wheat — not more than sufficient to support the stock and negroes, until the executors could, at the next court, prove the will and get authority to sell. It is in evidence that it was not sufficient; for a considerable portion of the growing crop was used for that purpose. — - Now although it may be the duty of the executor upon a will like this, to sell all the perishable property, and invest the proceeds for the security of the fund, for the remainder-man, paying the interest, as the profits, to the legatee for life, yet some time must be allowed to make it, and in themeanwliile the stock must be supported and kept fit for sale, and the slaves fed. The executor ought not to sell until probate, to obtain which he is obliged to wait for a court, it is the interest of all concerned, that the support should be drawn from tiic property it* self, until the sale is made in seasonable time. Here it was in December 1825, about one month after tiro probate of the will. The exceptions of the defendant to so much of the report as charges the executors with thirty bushels of wheat on hand, is, on this ground allowed. And the exceptions to so much of the report as charges them with the corn and cotton growing at the testator’s death, is also allowed. In the account a particular quantity of corn, 80 barrels, is charged as a distinct item, at 8360, and also of fodder, 10 stacks $25, which is seen at once. But the cotton explicitly appear upon the report. There iu for one hale as an item in the account, beif master states, a part of the crop not sol down at the price of gSO. But the princql this charge is in the general item of “ atnourf 81967" 93, which upon a reference to the accouii sales obtained from the County Court, (which was the
 
 *425
 
 evidence on which the master acted,) is found to include 9263 lbs. of cotton,disposed of at the general sale by auction, at $ 505 68. It appears upon the proofs that this cotton, fodder and corn was o.n the land when the testator died, and was gathered by the executor and widow. To the latter they belonged, and to her the executor is accountable, and not to the residuary legatees in remainder.
 

 A legatee for life is bound to keep down the interest of a debt charged upon Ins legacy, and lie may be compelled to contribute to its payment. But he is not bound to surrender the ■whole profits for the purpose of extinguishing it.
 

 The same is true also as to the charges of the hire of the slaves.which belong to Ibe widow. When there is ade.vi.se of lands,or a specific bequest of a chattel for life, with remainder'over, and the subject is charged with debts not equal to the. whole value, the tenant for life may be required to keep down the interest out of the profits, or the parties are required to raise the principal by contributions in proportion to the value of their respective interests, But certainly in no case can the remainder-man require the whole profits to be applied in extin-guishment of the charge, for the sake of saving the subject, for that would defeat the life estate altogether— But in a residuary bequest to one-for life,and then over, the whole is subject to the immediate payment of debtsf and the executor may and ought to sell enough for that purpose, in the first instance. For it is only what remains, after payment of debts, that is given either for life, or over. So much of the capita! is to be sunk at oucc. Here it has been done, by the sale of a part of the consumable articles, and a part of the slaves; and the plaintiffs say that was wrong, and so the master finds, because there were sufficient profits of the unsold slaves to answer that end. That position cannot be maintained. These profits arc the use given to tlie tenant for life. The exception to these charges in the account must therefore be allowed.
 

 The master has also charged the executor with 28 shoats, 35 fat hogs, 6 sheep, 30 gallons of-brandy, and some casks and hogsheads, of the value altogether .of $261. He has also charged them with the value of some household furniture, not sold either at the sales after the death of the testator, or after that of the widow,
 
 *426
 
 to the value of Si5.' 'The executors except to these charges upon the ground that these articles were noces-sary to the support of the widow atid the family, and in order to keep up the plantation.' The' argument on the other side is that these'articles should all have been sold, and if necessary for that purpose, the proceeds applied to the payment of the debts, or if not thus needed, invested and the interest only paid to the widow for life, and therefore that the executors are chargeable with their value.
 

 nfc^of a^pecifa-chattel has a right ofh^andThea” sentofthecxecu-vegUs the title of himinremaiiidcr.
 

 We’believe the common understanding of testators in the rountry is with the defendants; for they can hardly be supposed t > give to their widows lands and negroes for life, and to intend to strip the plantation.— But we believe likewise that the law is (dearly with the plaintiffs on this point. '
 

 Where there is a gift of a specific, chattel for life, and then over, the executor may assent to the legacy and discharge himself from liability to the remainder-man, by delivery to the tenant for life, for the assent to that legacy.is an assent to the one in remainder. It was formerly held, indeed, that the executor would be hound to the remainder-men, unless he took security from the tenant for-life, that the thing should be forth-coming at his death. But unless there he collusion, it is now held otherwise, and the tenant for life is only bound to give a receipt, or sign an inventory as it-is called, unless there be reason to believe that the article will be- destroyed or sent away — in which case the executor may refuse to deliver it without security, or the remainder-man may after delivery file his bill for security.
 
 (Foley
 
 v.
 
 Burnell,
 
 1
 
 Bro. Ch.ca
 
 279.) In such cases, the remainder-man must be content to receive the article as it ought to be left by the first taker, after using it with ordinary care and prudence. ' When, however, there is such a specific gift of what we commonly call, and what the master here calls, “perishable articles,” or of what are embraced under the description in the books, of “ articles
 
 qua ipso usu
 
 consumuntur,” it is difficult to say what is meant. I rather think testators seldom do
 
 *427
 
 mean to give such tilings for life only, and that those words are annexed by mistake to that gift, by inadvertently inserting it in the clause giving other things of a different kind, and which are meant to be for life only. But if the testator really intends such a gift to be for life, we can hardly imagine what rights of enjoyment he meant for the objects of his bounty respectively. For to give wine, corn, sheep or cattle for life, is to give the whole, if the legatee is to have any use oí if, since the property, nay, the consumption, is inseparable rrom the use: unless the testator has this further meaning, that the tenant for life may consume and sell, as he would himself if living, and that whatever is left, both of the original stock and the increase, shall be taken as the estate of the testator, and go to the remainder-man. I rather suppose that this, is the. meaning, for such dispositions are generally found in the provisions for wives, to whom children are to succeed, and the testator supposes that the mother would wish them to take all whether it be his or her estate. This notion may have grown up from the rule of our law respecting the increase of slaves given for life, all the articles being given together in the same clause. But to the admission of such a construction there is the insuperable objection that it is against the positive and ancient rule of the common law, that the increase is the use and profit,and therefore belongs to the tenant for life in whose time it accrued; to which, slaves constitute the only admitted exception. We would not feel authorised, upon bare conjecture as to the testator’s intention, to carry it farther. Then what are the respective interests of the tenant for life, and remainder-men inconsumable chattels specifically bequeathed ? From the decisions it is far from clear. We do not know of any in our own courts upon the point. In England it is apparently unsettled. In
 
 Foster v. Tournay,
 
 (3
 
 Ves.
 
 311)
 
 Lord Mvanley
 
 said that some learned judges had thought the articles must bo sold, and the persons entitled to the limited use have only the interest; which he thought very rigid. Yet in
 
 Randall
 
 v.
 
 Russell.
 
 (3
 
 Meriv.
 
 190) Sir
 
 William Grant,
 
 
 *428
 
 taking notice of that observation, says that bis conception is that a gift for life, if specific, is a gift of the pro- ‘ perty in tilings,
 
 “quae ipso usu consumuntur,”
 
 and that it conics within the reason of the old law that there cannot be a limitation over of a chattel after a life estate.He admits it to be otherwise, when such articles arc included in a residuary bequest, with ethers of a different nature, in which case the whole arc to be sold by the executor, and .the interest received by the tenant for life. That is the case now before the,court, and therefore further speculation upon the effect of a specific bequest is unnecessary.
 

 
 *427
 
 When a specific chattel which is consumed in the use, is g ven for life, what interests vests in the remainder-man!
 

 
 *428
 
 It seems clear that when a residue is given, as such, it is to be sold by the executor. The several things are not given, the testator supposing them not worth giving, ■ as
 
 corpora,
 
 not knowing how much, or'which of them it may be absolutely necessary to -sell for payment of debts and pecuniary legacies. The gift is then of the nett balance of the proceeds after the'debts are paid, which implies a sale. And .if this were-not the case, when there is an immediate gift of the residue after the debts arc paid,it must be, when there is a limited use given in the surplus to one for life, and then to another; for then there is nothing to shew that as to the consumable articles the testator meant to give the particular legatee that use which consists in consumption, and as they are complicated in the same clause, with the others of a different nature, the whole must go together, and as a part must be sold, the whole must, and the first taker have the profit only. For upon the intention it is taken tfiat the benefit is to be divided between the legatees in the whole subject, which cannot otherwise be, for if the tenant for life does not use the perishable articles, he gets no benefit, and if lie does use them, the legatee over gets none. Such parts of the exceptions as relate to these articles must therefore be overruled. The executor is properly charged with the value of them in this suit, and as the widow had the benefit of them, he will be entitled in the settlement he will make with her representative, to the value now answered for by him, as
 
 *429
 
 a credit against the charges against him for her cotton sold by him, for which he lias by this decision credit in this suit.
 

 To the rule thus laid down, slaves are an acknowl-ed expection, fouuded on the known expectations of testators, and the general understanding of the country, and the profession. Indeed the reason of the rule itself constitutes them an exception. They are not wasted by use, and if they are, that waste is supplied by their issue, which it has long been held, goes with the remainder. With respect to them, service and not increase is the use, of the tenant for life. When, therefore, they are included in a residue with o.ther things, they are to be treated as they generally are when left by an intestate, not sold, as other parts of the estate, but divided amongst those entitled, unless a sale be necessary for debts or distribution.
 

 The defendant
 
 .William
 
 having submitted to have his purchase of
 
 Dave
 
 declared void at the election of the plaintiff, it would be of course. But the master has charged the price of him, (which is proved to be a full one,) in the account, and it has been paid in discharge of debts, ami the plaintiffs have taken no exception upon that point, which is an election, and binds them.
 

 The result of these views is that a balance is found due to the executors as far as the accounts have been stated, and the bill would be dismissed but' that the plaintiffs may wish a further enquiry upon the subject of
 
 John Barham’s
 
 debt. For that purpose the cause will be retained, but if no motion for further directions be made by the plaintiffs, on or before the calling of the case at next term, the bill will be dismissed afterwards, when moved for by the defendants.
 

 Per Curiam, — Order accobdingut.