IN THE MATTER OF THE ADMINISTRATION OF THE ESTATE OF
D. J. KNOWLES.

(Filed 14 October, 1908.)

1. Executors and Administrators—Insolvency of Executors—Removal—Waste.

An executor will not be removed for insolvency, upon petition of those interested in the estate, if such was his condition in the lifetime of his testator and known to him, when there is no evidence of waste or misapplication of funds.

2. Same—Bond.

A bond will not be required of an executor because of his insolvency, unless there is evidence of his wasting the estate of his testator or misapplying the assets, or danger that a *devastavit* will be committed.

3. Same—Personalty Incident to Enjoyment of Land—Right of Use and Consumption—Remainder.

In an action to require an executor to give bond for the alleged ground of insolvency and that a *devastavit* has been committed, the will devised and bequeathed to the wife "all my personal property, to use as long as she lives," with limitation over; also to her during her life "full privilege and control" of the land and real estate, with limitation over. Under citation

from the Clerk, the executors filed inventory showing payment of all debts and delivery to the wife of certain moneys, household and kitchen furniture, and also certain products from the land: *Held*, (1) the use of the personal property was incident to the enjoyment of the land, and was properly delivered to the widow, to be used by her for her support in keeping with her condition and standing in life; (2) what was not consumed will at her death go to the remaindermen; (3) an order requiring the executors to file a statement of their account, with permission given petitioners to apply for a receiver, if it appeared they were wasting the estate, afforded full protection to the remaindermen.

4. Executors and Administrators—Waste—Wills, Interpretation of.
     When it is necessary to construe the will, in an action against the executors for waste, to determine the questions involved, the court will do so to that extent and for that purpose only.

HOKE, J., concurs in result.

ACTION heard by *Neal, J.*, at May Term, 1908, of SAMPSON.

David J. Knowles, lately domiciled in Sampson County, died in November, 1907, having first made and published his last will and testament, the first item of which is in the following words: "I give, devise and bequeath unto my wife, Margaret Knowles, all my personal property, to use as long as she lives, and at her death to be equally divided among my children, my grandchildren, Fred Knowles and Leona Knowles, to share as one child. Also, I give unto my wife during her lifetime full privilege and control of my land and real estate." In another item he gave all the "rest and residue" of his personal property or real estate, to be equally divided between his children and grandchildren. He appointed his wife, Margaret Knowles, and A. W. Knowles executors, etc. The will was duly admitted to probate on 8 November, 1907, and the executors duly qualified. On 27 December, 1907, the executors returned to the court an account of sale of a portion of the personal property which came into their hands from the estate of their testator, amounting to $121.32. On 15 February, 1908, the petitioners filed in

*In re* Knowles.

the Superior Court a petition alleging that they had an interest in the real and personal property of the testator; that at the time of his death he had a large amount of cash on hand, besides notes and other solvent credits, and a great deal of personal property, which ought to have come into the hands of the executors; that they had failed to file an inventory, as required by law; that they were insolvent, etc., and praying that they be required to file an inventory and to show cause why they should not be required to give a justified bond, and, in default thereof, that they be removed. Pursuant to the petition, the Clerk issued a citation to the executors to show cause, etc. In reply to said notice the executors filed their answer, admitting that certain personal property came into their hands, and averring that they were not concerned as executors with any of the personal property, saving and excepting a sufficiency to pay off the debts of the testator, and that they had sold enough for that purpose and had settled all of the debts, etc.; that, under the terms of the will the widow, Margaret Knowles, was given all of the personal property. They deny the right of the petitioners to question their management of the estate. On 9 March, 1908, the Clerk made an order directing the executors, on or before 19 March, 1908, to file an inventory, etc. On said day the executors filed an inventory of the personal property, which was delivered to or retained by the widow, under the provisions of the will, consisting of two mules, one horse, eleven head of cattle, nine hogs, one wagon, a lot of household and kitchen furniture and some agricultural implements, twenty barrels of corn, 1,000 pounds of shucks, 500 pounds fodder and $580 in money. The money was deposited in the bank, to the credit of Mrs. Knowles. They also filed an account showing the receipt of $121.32 from sale of property and the payment of $168.68 on account of debts, burial expenses, tombstone, doctor's bill, taxes, attorney's fees, etc. On the hearing the Clerk found upon the evidence and exhibits that

the executors were competent to manage the estate of their testator, and that it had not been squandered or misapplied, and that no fraud had been practiced or attempted to be practiced. He rendered judgment dismissing the petition and taxing the petitioners with the cost. From this judgment petitioners appealed to the Judge, who affirmed the judgment requiring the executors to file in the Clerk's office every four months a statement of their account, with permission to petitioners, if it appeared that they were wasting the estate, to apply for the appointment of a receiver. From this judgment petitioners appealed.

*Fowler & Crumpler* and *John D. Kerr* for executors.
*Faison & Wright* for petitioners.

CONNOR, J. We concur with the order made by his Honor affirming the action of the Clerk. It is settled that the court will not remove an executor by reason of insolvency, when such condition existed at the time the will was executed and was known to the testator, unless it appears that he is wasting or misapplying the assets. *Barnes v. Brown,* 79 N. C., 401; *McFadgen v. Council,* 81 N. C., 195. In the absence of any such reason, or any well-grounded apprehension that a *devastavit* will be committed, a bond will not be required. The Clerk in this case finds that the property sold by the executors has been duly accounted for and the debts paid, and the accounts filed and made a part of the record sustain the finding.

The petitioners, however, insist that by delivering to the widow the personal property not sold, including the money on hand, the executors have committed a *devastavit.* They contend that it was the duty of the executors to have sold the property and with the proceeds, together with the money on hand, created a fund, to be invested during the lifetime of the widow, paying to her the interest, to the end that upon her death the *corpus* be paid to them. The learned and diligent counsel cited to us a number of cases which he con-

*In re* KNOWLES.

tended sustained his view. It is, of course, the duty of the court, in all cases involving the construction of a will, to ascertain and effectuate the intention of the testator. This, it has been wisely said, is the "pole star" by which the court will be guided. While this statutory proceeding is not in a strict sense a suit to have the will construed, it becomes necessary to do so for the purpose of ascertaining whether, in delivering the property and paying the money to the life tenant, the executors have committed a *devastavit*. For this purpose only, and not for the purpose of concluding the parties in interest in any other properly instituted proceeding, we proceed to consider the duty of the executors under the provisions of the will. In *Smith v. Barham,* 17 N. C., 420, *Ruffin, C. J.,* discussed the question respecting the duty of the executor when specific articles are given to one for life, with remainder over, and when, after disposing of his estate by specific bequests, the testator gives the residue to one for life, with remainder over. While conceding the difficulty of carrying out the intention of the testator in "most cases" by following the "positive and ancient rule of the common law," he concludes, that "When a residue is given as such, it is to be sold by the executor. The several things are not given, the testator supposing them not worth giving as *corpora,* not knowing how much or which of them it may be absolutely necessary to sell for payment of debts and pecuniary legacies. When there is a gift of a specific chattel for life, and then over, the executor may assent to the legacy and discharge himself from liability to the remainderman by delivering it to the tenant for life, for the assent to that legacy is an assent to the one in remainder." The Chief Justice notes that it was formerly held that the executor should take from the legatee for life a bond that the article should be forthcoming at his death, but that now, unless there is collusion, the life tenant is only required to give a receipt

148—30

to the executor, unless there is cause to believe that the article will be destroyed or sent away. The rule laid down in *Smith v. Barham* was followed in *Jones v. Simmons,* 42 N. C., 178. As in *Barham's case,* there was a gift for life of the residue, subject to the payment of debts. In *Ritch v. Morris,* 78 N. C., 377, the gift for life was subject to the payment of debts and charges of administration. *Judge Bynum,* with his usual industry and clearness, reviews the cases which, at first glance, appear to be conflicting, and shows that they follow the distinction made or rather pointed out in *Smith v. Barham, supra.* Referring to the cases in which the executor was directed to deliver to the legatee for life the articles bequeathed, he says: "There being no bequest of a *general residue* for life, these latter cases have no application, and *Smith v. Barham, supra,* stands unopposed to any of the cases we have reviewed." We note some of the cases referred to by *Judge Bynum.* In *Tayloe v. Bond,* 45 N. C., 5 (25), *Pearson, J.,* referring to *Barham's case* and, *Jones' case, supra,* says: "In those cases a mixed and indiscriminate fund is given as a *residue* to one for life, with a limitation over." Enumerating the distinctive features of the several wills, he says: "The very object of the gift is that Mrs. Ashburn may be supported by the *use of the property.*" The same conclusion was reached, for the same reason, in *Williams v. Cotten,* 56 N. C., 395. In *Chambers v. Bumpass,* 72 N. C., 429, the bequest was "all of the residue of my estate," etc. *Pearson, C. J.,* finds in this language "the intention of the testator that the plaintiff should enjoy the use of his house, furniture, farming implements, specifically, during her life or single state, and not that she should have the interest or what it should sell for." He says: "This is not a residuary legacy, but a universal legacy." The Chief Justice cites none of the authorities. It is not necessary that we shall inquire whether the decision is in harmony with *Smith v. Barham;* in any view it sustains the judgment in

this appeal. In *Hodge v. Hodge*, 72 N. C., 616, there was a legacy of money for "the use and benefit" of one for life, remainder over. The Court held, upon the authority of *Camp v. Smith*, 68 N. C., 537, that the executor should pay the money to the legatee without requiring bond. *Settle, J.,* says: "The principle seems to be that, as the testator has entrusted him with the money without requiring security, no person has authority to do so." In *Britt v. Smith*, 86 N. C., 305, the testator gave to his wife "all of my personal property" during her natural life or widowhood, and after her death or widowhood, over, etc. *Ruffin, J.,* reviewed the authorities, saying: "So far as we have been able to inform ourselves, from a critical examination of all the adjudications upon the subject to which we have access, no operation has in any instance been given to the rule (in *Barham's case*), save in the case of a *residuary bequest* given *eo nomine* as such." The language of the learned Justice is so appropriate that we quote it as conclusive of this appeal. He says: "We are struck at the very outset with the strong purpose manifested by the testator to make an ample and certain provision for his wife. By one comprehensive clause he gives her *all* his lands for life, and, with the slight exceptions indicated, *all* his personalty, the latter consisting in a great degree of articles absolutely essential to the enjoyment of the former and, indeed, we may say, necessary to her immediate comfort and support, and such as she could not supply, in the event of a sale, without incurring debt or other inconvenience." The language of the will in this appeal, the age of the wife, the inventory showing the character of the property bequeathed, all point with unerring certainty to the intention of the testator. It is the expression of the purest and highest sentiment and manifest duty of the husband to provide for the comfort and welfare of the wife, free from molestation or interference on the part of those whose duty it is to be her aid and comfort, after a lifetime spent in their

rearing and support. It would do violence to the testator's sense of obligation and duty to so construe this provision for his widow as to strip her of the substance gathered by their joint industry and frugality, sell the household and kitchen furniture, not only necessary to her comfort, but having sacred association with her married life, its joys and sorrows. To give her land and leave her without supplies, implements, teams and other necessary property to make it contribute to her support would be most unreasonable and unjust. The property and money are hers, to use for her support and comfort. The executors properly delivered them to her. They have paid the debts and funeral expenses and, so far as this record shows, freely discharged their duty according to law. She is entitled to use the property, including the money to supply her needs, for her support in the state and manner suited to her age, health and condition in life. The inventory shows what she has received, and what has not been consumed in the use will at her death go to the petitioners. But it is said that she claims it all as her own, to do with as she pleases, and should therefore be required to give security. His Honor's judgment fully protects them. Complaint is made that the costs are taxed against the petitioners. The Clerk's findings of fact, sustained by his Honor, show that they were overanxious about the widow's legacy. Failing to sustain the charge of misconduct, it is but just that they pay the cost. The statute so directs. The judgment is

Affirmed.