A. W. HAYWOOD AND E. C. LAIRD, SURVIVING EXECUTORS AND TRUSTEES UNDER THE WILL OF THOMAS M. HOLT, v. ELLA M. WRIGHT AND HER HUSBAND, C. B. WRIGHT, AND LOUISE B. WRIGHT, AN INFANT, ETC.

(Filed 27 April, 1910.)

1. Wills—Bequests for Life—Trusts and Trustees—Shares of Stock —Management and Control—Interest to Life Tenant—Executors and Administrators.

While the executors under a will bequeathing specific personal property for life, remainder over, may assent to the legacy and deliver the property to the life tenant, unless the exigencies and proper administration of the estate otherwise require, without ordinarily being charged with the duty of looking further after the property and of insuring its delivery intact to the remainderman, a different principle prevails when a mixed fund, under a general residuary clause, *eo nomine,* is given to one for life, remainder over. In this latter case the executor is ordinarily required to sell the property, pay the interest on the proceeds to the life tenant, and hold the fund for the remainderman under the will.

2. Same—Interpretation of Wills—Different Intent.

Both of these principles, however, are only rules of interpretation established because they are ordinarily supposed the better to effect the testator's intent, and both yield when it is apparent that a different intent is required by the terms of the will.

3. Same.

Where a testator in the 4th clause of his will bequeaths the certain shares of stock in a corporation to his five children, two sons and three daughters, the portion of the sons absolutely, and that of the daughters to them for life, remainder over, and affects the remainder with a contingent limitation, and styles the provision for these daughters as a limitation and trust; and another clause, to wit, clause 5, provides for a sale and reinvestment of the stock, and directs that on such sale the executors shall retain and invest the proceeds, paying the interest to the daughters for life, and the remainder over under the same limitations and trusts as contained in clause 4; and in various other clauses of the will refers to the limitations and trusts provided for his daughters in sections 4 and 5, and finally appoints certain persons executors and trustees to

carry out and perform the "trusts hereinbefore declared": it sufficiently appears that the testator desired and intended to impress the fund with a trust, and it became the duty of the executors and trustees named to take charge of the stock to be held by them as executors, while the exigencies and well ordering of the estate so required, and then to turn the same over to themselves as trustees to be dealt with and disposed of as the proper management of the trust would suggest, and as directed by the provisions of the will.

4. Wills—Shares of Stock—Bequest for Life—Trustees—Corporations—Voting Powers.

When the terms and provisions of a will bequeathing a life interest in certain shares of stock in a corporation is construed to be that the shares be held and controlled by trustees therein named as executors and trustees, the trustees may vote the same in stockholders' meetings under Revisal, sec. 1185, and sec. 1186, providing for the voting of the shares by the life tenant, has no application.

WALKER, J., did not sit on the hearing of this case.

PROCEEDINGS, from ALAMANCE, to obtain the construction of the last will and testament of Governor Thomas M. Holt, deceased, heard by consent, a jury trial having been formally waived at Hillsboro, N. C., on 15 March, 1910, before his Honor, *W. J. Adams, J.,* holding the courts of the Ninth Judicial District.

The facts pertinent to the inquiry, found on the hearing to be true, are stated in the original complaint as follows:

"1. That on 11 April, 1896, Governor Thomas M. Holt, a resident and domiciled in said Alamance County, N. C., died in said county, leaving a last will and testament and codicils thereto, wherein and whereby Charles T. Holt, A. W. Haywood, Thomas M. Holt, Jr., and E. C. Laird were named as executors and trustees thereof, a copy of which last will and testament and codicils is hereto attached, marked 'Exhibit A' and made a part of this complaint.

"2. That subsequently, to wit, on 13 May, 1896, said last will and testament and codicils thereto were duly admitted to probate before the clerk of the Superior Court of said county, and recorded in his office in Will Book No. 3, at page 112.

"3. That the said Charles T. Holt, A. W. Haywood, Thomas M. Holt, Jr., and E. C. Laird, on 13 May, 1896, duly qualified as executors of said last will and testament and codicils thereto, before the clerk of the court, who duly issued to them letters testamentary thereon, and they thereupon at once entered upon the discharge of their duties as such executors.

"That the said Thomas M. Holt, Jr., died on 6 January, 1897, and the said Charles T. Holt died on 13 December, 1900,

leaving the plaintiffs, A. W. Haywood and E. C. Laird, as the sole surviving executors and trustees under the said last will and testament and codicils thereto.

"4. That the defendant Ella M. Wright is one of the three daughters of said Governor Thomas M. Holt, deceased; is the same person named in said last will and testament and codicils thereto, and is possessed absolutely in her own right of large means outside of the property involved in this controversy.

"That the defendant C. Bruce Wright is the husband of said Ella M. Wright, and they both reside at Raleigh, N. C.

"That the defendant Louise B. Wright is the daughter and only child of said C. Bruce Wright and Ella M. Wright; resides with her said parents at Raleigh, N. C.; is an infant under the age of 21 years (being 20 years of age) and is without general or testamentary guardian, and appears in this action by her duly appointed guardian *ad litem,* C. B. Wright.

"5. That the estate of said Governor Thomas M. Holt, at the time of his death (outside of the property specifically devised and bequeathed by his said last will and testament and codicils thereof) consisted, among other things, of shares of the common stock of cotton-mill corporations located at Haw River, N. C., and of other corporations, life insurance policies, bonds of corporations, money on hand, a plantation in Davidson County, N. C., known as 'Linwood,' with horses, mules, cattle, farming implements, crops, houses, household and kitchen furniture, etc., on said plantation and was of a mixed character.

"That a large part of the proceeds of collection of said life insurance policies and of the proceeds of sale of small parcels of said 'Linwood' plantation were loaned out; said loans being represented by what was generally known as 'trustee notes,' said notes amounting in the aggregate to $35,092.64, principal money.

"6. That cotton-mill corporations located at Haw River, N. C., were subsequently, to wit, on 14 May, 1901, consolidated into one corporation, known as the Holt-Granite Manufacturing Company, and the stock in said old cotton-mill corporations was exchanged for stock in the said new consolidated corporation.

"In exchange for the common stock in said old cotton-mill corporations, held for the benefit of the defendant Ella M. Wright, the plaintiffs received and now hold, for her benefit, 711 shares (of the face value of $71,100) of the common stock of said new consolidated corporation, the said Holt-Granite Manufacturing Company, the certificate therefor being issued and now standing in the name of A. W. Haywood and E. C. Laird, surviving trustees under the will of Thomas M. Holt, for Ella M. Wright and others.

"7. That pursuant to the power and authority conferred by item 6 of said last will and testament and codicils thereto of said Governor Thomas M. Holt, the balance of said 'Linwood' plantation and personal property thereon was on 18 March, 1907, sold and conveyed by the executors of said Governor Thomas M. Holt, and the share (to wit, $5,800) of the proceeds of such sale for the benefit of said defendant Ella M. Wright was pursuant to her instructions, invested in the 6 per cent first preferred stock of said Holt-Granite Manufacturing Company, for which the plaintiffs received, and now hold, for the benefit of said Ella M. Wright, 58 shares (of the value of $5,800) of said preferred stock, the certificates therefor being issued and now standing in the name of A. W. Haywood and E. C. Laird, executors and trustees for Ella M. Wright and others.

"8. That said 'trustee notes' (representing, as aforesaid, a large portion of the proceeds of life insurance policies and the proceeds of sale of small parcels of said 'Linwood' plantation) were collected on 8 April, 1907, and the share (to wit, $8,800) of the same for the benefit of said defendant Ella M. Wright was, pursuant to her instructions, invested in said 6 per cent first preferred stock of said Holt-Granite Manufacturing Company, for which the plaintiffs received, and now hold, for the benefit of said Ella M. Wright, 88 shares (of the face value of $8,800) of said preferred stock, the certificates therefor being issued and now standing in the name of A. W. Haywood and E. C. Laird, executors and trustees for Ella M. Wright and others.

"9. That the plaintiffs have, from time to time, paid over to said Ella M. Wright the income from the property and estate devised and bequeathed as aforesaid, by said Governor Thomas M. Holt, for her benefit, and from said common and preferred stock, into which the same was converted and was received, and is now held as aforesaid by the plaintiffs, for her benefit.

"10. That all the debts of said Governor Thomas M. Holt, presented to his executors, have been paid, and there are no other debts due by him, to the best of the plaintiffs' information and belief, and all the specific legacies and devises made in said last will and testament and the codicils thereto have been paid and discharged.

"11. That the plaintiffs aforesaid now have in their possession assets belonging to the estate of said Governor Thomas M. Holt, which was devised and bequeathed for the benefit of said Ella M. Wright, or its proceeds, as follows:

"Seven hundred and eleven shares (of the face value of $71,100) of the common stock of said Holt-Granite Manufac-

turing Company, derived as aforesaid from the exchange of Governor Holt's original stock in the old cotton mills at Haw River, N. C.

"Fifty-eight shares (of the face value of $5,800) of the 6 per cent first preferred stock of said Holt-Granite Manufacturing Company, derived from the sale of said 'Linwood' plantation and its personal property.

"Eighty-eight shares (of the par value of $8,800) of the 6 per cent first preferred stock of said Holt-Granite Manufacturing Company, derived from collection of said 'trustee notes,' which notes represented collections of Governor Holt's life insurance policies and sale of small parcels of said 'Linwood' plantation, all subject, however, to the cost and expenses of administering and settling any trust in regard thereto.

"12. That the plaintiffs are ready and anxious to make a final settlement of the estate of their said testator, and to pay, deliver and turn over to the parties entitled thereto all the assets belonging to his estate, as soon as they can safely do so; but owing to difficulty arising from the obscure and uncertain terms of some of the clauses of his said will and codicils thereto, they desire, for their protection, to obtain the construction of the terms of said will and codicils by the court, and directions from the court as to their duties in the premises, and to that end they ask of the court a solution of the following questions, arising upon the construction of said Governor Thomas M. Holt's will and codicils thereto, as follows:"

And in an amended complaint, filed by leave of court, the procedure by which three corporations were consolidated and the Holt-Granite Manufacturing Company formed, and stock therein substituted for the original holdings, was more fully and formally stated.

The portions of the principal will and codicils relevant to the questions presented here are as follows:

"Fourth. I give, devise and bequeath unto my five children, Charles T. Holt, Thomas M. Holt, Jr., Cora M. Laird, wife of Dr. E. Chambers Laird; Louise M. Haywood, wife of Alfred W. Haywood, and Ella M. Wright, wife of C. Bruce Wright, in equal parts, all my shares of stock in the 'Granite Manufacturing Company,' a corporation duly chartered, organized and doing business in the State of North Carolina; the parts and shares of my two sons to them and their heirs, executors and administrators, absolutely and in fee simple; but the parts and shares of my daughters to be each one severally, for and during her life, with remainder absolutely and in fee simple to such child or children of hers, if any, or the issue of such child or

children. Should any child or children of either of my said daughters predecease their mother and leave issue—as shall be alive at the time of the death of their mother—the issue to represent their parent and take such share as he or she would have taken, if alive; but should either of my said daughters die leaving no child or children or the issue of such, alive at the time of her death, then with remainder, as to the share of the one so dying, to my other children, share and share alike, and the issue of such as may be dead, the issue representing their parent and taking such share as he or she would have taken, if alive, on the same limitations and trusts as hereinbefore expressed as to their own shares devised and bequeathed to them in this last will and testament.

"Fifth. My children may wish to sell the property above given to them, and in case they do, my desire and direction is that any one so desiring to sell his or her share may do so, on condition that they shall give the others the option and refusal to take such share or shares at a fair and *bona fide* price before selling out of the family; or they may concur in making a joint sale of the whole, and they are hereby authorized to do so, if they wish; then, and in either case, that is to say, whether, on a joint or a several sale, the shares of the daughters in the proceeds of the sale shall be received by my executors hereinafter named, and by them invested in trust to pay the annual interest on each one's share to her during her life, and at her death, in trust absolutely and in fee simple for such child or children of hers, if any, or the issue of such child or children—should any child or children of my said daughters predecease their mother and leave issue—as shall be alive at the time of the death of their mother, the issue to represent their parent and take such share as he or she would have taken, if alive; but should either of my said daughters die leaving no child or children or the issue of such alive at the time of her death, then the share of the one so dying in trust for my other children surviving, share and share alike, and the issue of such as may be dead, the issue representing their parent and taking such share as he or she would have taken, if alive, on the same limitations and trusts as hereinbefore expressed as to their own shares, devised and bequeathed to them in this last will and testament.

"Sixth. I give, devise and bequeath my Linwood farm in Davidson County, containing about 1,100 acres, and also my Jersey Mills in the same county, with all my personal property of every kind on said plantation, and in said mills, unto my sons and daughters hereinbefore named, the shares of the sons

therein to them and their heirs in fee simple, and the shares of the daughters on the same limitations and trusts as hereinbefore expressed as to their shares in the devise and bequest to them contained in the fourth and fifth items of this my last will and testament; and in regard to this property my wish and direction is that my executors hereinafter mentioned do keep and run the same, using for that purpose the stock, implements and other personalty thereon at the time of my death, and that they divide and pay over at the end of each year the net profits therefrom to my said five children, the share of each to be in absolute property, and so continue to do until, by consent of all, a sale is requested, or in the judgment of my executors it is thought best to sell; and then, and in either case, my direction is, that my executors sell and convey said property, real and personal, and divide out the proceeds and pay over the same, except as to the shares therein of the daughters, which they shall invest and hold in trust for them for life, and with remainder as expressed in regard to the purchase money of the property devised and bequeathed in the fifth item of this my last will and testament.

"Seventh. All the rest and residue of my property of every kind and description, including bonds, stocks, notes, accounts, policies of insurance on my life for my benefit, the sums charged on the devises and bequests to my sons, Charles T. Holt and Thomas M. Holt, Jr., so much of the Ætna Life Insurance Company policy set apart as a provision for my wife as she may not consume, and all demands of every sort and kind, due and owing to me at the time of my death, shall be a fund in the hands of my executors for the payment of my debts and costs and charges of administration, among which shall be considered and allowed $250 to each of my executors in full for all services in executing this my will, except as to the shares of my daughters directed to be held in trust, for which they may receive a compensation out of the trust fund to be such an amount as may be just, fair and reasonable for their services as such trustees; and should there be any residue from this source remaining in their hands after the payment of my debts and the costs and charges of administration, I give, devise and bequeath the same to the same parties and on the same limitations and trusts as hereinbefore set out in items four and five of this last will and testament.

"Ninth. Lastly, I nominate, constitute and appoint my son Charles T. Holt and my son-in-law A. W. Haywood, and my son Thomas M. Holt, Jr., at his full age of twenty-one years, as

executors of this my last will and testament, and as trustees to carry out and perform the trusts hereinbefore declared, hereby revoking all former wills by me made."

And by codicil, purporting to have been executed 26 January, 1892, reference is made to the interest bequeathed to defendant Mrs. Ella M. Wright, as follows:

"And whereas, I have not during my lifetime given to my daughter Ella M. Wright, wife of C. Bruce Wright, as much in value as I have to each of my other four children, now, in order and for the purpose of making her share in my estate equal to that received by my other children, I do hereby give and bequeath to my said daughter Ella M. Wright, for and during her life, with remainder as stated in item fourth of my said last will and testament and on the same limitation and trusts as expressed as to her share in the devise and bequest to her contained in the fourth item of this my last will and testament, one hundred and twenty-six (126) shares of stock in the 'Granite Manufacturing Company.'"

And in another codicil, purporting to have been executed 28 December, 1893, further reference is made as follows:

"And whereas, in a former codicil to this my last will and testament, said codicil bearing date 26 January, 1892, I gave and bequeathed to my daughter Ella M. Wright, for and during her natural life, with remainder as expressed and stated in said codicil, one hundred and twenty-six (126) shares of stock in the Granite Manufacturing Company;

"And whereas I now desire to give to my said beloved wife, Louisa M. Holt, for and during her natural life only, with remainder over as hereinafter declared and provided for, an equal or one-sixth (1-6) part or share in such stock of the Granite Manufacturing Company as I shall own at the time of my death, first deducting therefrom the above-mentioned one hundred and twenty-six (126) shares, I do hereby declare, will and give and bequeath to my said beloved wife, Louisa M. Holt, for and during her natural life only, an equal or one-sixth part or share in such stock of the Granite Manufacturing Company as I shall own at the time of my death, first deducting therefrom the above-mentioned one hundred and twenty-six (126) shares, and at her death I give, devise and bequeath the remainder, after my said wife's life estate in said one-sixth part or share in said above-mentioned stock to the same parties and in the same estates and upon the same limitations and trusts, terms and conditions as are set out in items four and five of my said last will and testament.

"The provisions, legacies, bequests and devises to my said

wife in this codicil contained are in lieu of her dower and distributive share in my property and estate and in full of her portion of my said estate; and the executors and trustees named in my said last will and testament are hereby constituted and appointed trustees to carry out and perform the trusts hereinbefore in this codicil and in my said last will and testament declared as to and in favor of my said wife; and in case of a joint sale of the property, as provided for in the fifth item of my said last will and testament and of my said wife's concurrence in the same—and she is hereby authorized to concur in such sale if she wishes—then, and in that case, the share of my wife in the proceeds of such sale shall be received by my aforesaid executors and trustees, which they shall invest and hold in trust for my said wife for and during her natural life, and in remainder. as expressed in regard to the shares of stock in this codicil hereinbefore bequeathed and disposed of, and from the sale of which the said proceeds of sale are derived."

And by codicil, purporting to have been executed 14 June, 1895, Dr. E. C. Laird was constituted one of the executors and trustees in terms as follows:

"I nominate, constitute and appoint my son-in-law Dr. E. C. Laird as one of the executors of my last will and testament, and as one of the trustees to carry out and perform the trusts declared in said last will and testament and the codicils thereto."

Upon this will, and the codicils thereto, and upon the pertinent facts as stated, questions were propounded as follows: Are the persons named as executors in said will constituted trustees of the estate and interest thereby conferred upon Mrs. Ella M. Wright, with power to hold, invest and control the same according to the provisions of said will for and during her life, paying the net income to her during such period, and, at her death, to pay over and deliver the corpus thereof to the parties entitled, etc.; and is their present duty to take charge of said estate as trustees? And the same interrogatories, in general terms, are submitted as to the 711 shares of common stock in the Holt-Granite Manufacturing Company, and as to the 58 shares of preferred stock, arising from a sale of the Linwood plantation, referred to in item 6 of the will, and as to the 88 shares of preferred stock purchased with proceeds of insurance policies from investment of "trustee notes," referred to and described in the statement of facts. Speaking more specifically with reference to the ownership and control of the shares of stock, the question is thus stated:

"3. Do said Governor Thomas M. Holt's will and codicils thereto constitute and make said A. W. Haywood and E. C.

Laird trustees to take now said 711 shares of common stock of said Holt-Granite Manufacturing Company, received in exchange for the share of the old cotton-mill stock bequeathed for the benefit of said Ella M. Wright, and until her death (or sooner sale of the same as provided for in said will), to hold the same in their name as such trustees, to keep in their custody the certificates for the same, to represent and vote the same, receive the income therefrom and after deducting from such income from taxes, charges and expenses of the trust, etc., to pay the net income so left to said Ella M. Wright; and upon the sale of the same during the life of said Ella M. Wright, as provided in said will, to receive as such trustees the proceeds of such sale, invest the same in their names as such trustees, and until the death of said Ella M. Wright, manage and control such investments, receive the income therefrom, and after deducting from such income the taxes, charges and expenses of trust, etc., to pay the net income so left to said Ella during her life, and at her death to pay, deliver and convey the said stock, or the investments into which it may have been converted, to the parties entitled thereto under and in the estates and proportions designated in said will and codicils thereto?"

And like specific statement is made as to the preferred stock, etc.

On the facts established, the court below entered judgment as follows:

That, under the will, and codicils thereto, of said Governor Thomas M. Holt, it was the right and duty of the plaintiffs to take the 711 shares of the common stock of the Holt-Granite Manufacturing Company and the 58 shares and the 88 shares of the 6 per cent preferred stock of said Holt-Granite Manufacturing Company, referred to in paragraph 11 of the complaint, and to hold in their name, to control and manage the same and the investments into which it may be converted, in trust for the benefit of the defendant Ella M. Wright, for life; said plaintiffs representing and voting said stock at the meetings of the stockholders of said corporation, receiving the dividends thereon and the income from the investments into which it may be converted, and, after deducting from such dividends and income the taxes, charges and expenses of the trust, etc., to pay the net income so left therefrom to said Ella M. Wright during her life, and at her death to pay, deliver and convey the corpus of the same, or of the investments into which it may have been converted, to the parties entitled thereto, under and in the estates and proportions designated in the will, and codicils thereto, of said Governor Thomas M. Holt.

That the costs of this action, as taxed by the clerk, be paid by the plaintiffs out of the estate of said Governor Thomas M. Holt in their hands as a part of the costs and expenses of administration.                                        W. J. ADAMS,

This 15 March, 1910.                                        *Judge.*

To this judgment defendants excepted and appealed, and assign for error:

1. The adjudication that it is the right and duty of the plaintiffs to take the 711 shares of common stock of the Holt-Granite Manufacturing Company, and to hold the same in their name, to control and manage the same, in trust, for the benefit of the defendant Ella M. Wright, for life, said plaintiffs representing and voting said stock at the meetings of the stockholders of said corporation, receiving the dividends thereon and the income from the investment, and to pay the net income to the said Ella M. Wright during her life, and at her death to pay and deliver the corpus of the same to the parties entitled thereto under the will and codicil of Governor Thomas M. Holt.

2. For that the said judgment does not authorize the life tenant, Ella M. Wright, to vote said stock at all stockholders' meetings.

3. For that said judgment does not authorize the said Ella M. Wright to have a transfer of said stock to herself for life, with limitations to her daughter, and the secondary takers, as provided in the will of Governor Thomas M. Holt.

*John W. Hinsdale, S. Brown Shepherd, Ernest Haywood* for plaintiffs.

*Aycock & Winston, Stedman & Cooke, Parker & Parker* for defendants.

HOKE, J., after stating the case: Our decisions are to the effect that when specific personal property is bequeathed to one for life, remainder over, the executors, unless the exigencies and proper administration of the estate otherwise require, may assent to the legacy and deliver the property to the life tenant. He is, ordinarily, not charged with the duty of looking further after the property, and of insuring its delivery intact to the remainderman.

This rule is qualified, or rather a different principle prevails, when a mixed fund, under a general residuary clause *eo nomine* is given to one for life, remainder over. In such case the executor is, ordinarily, required to sell the property, pay the interest on the proceeds to the life tenant, and hold the fund for the remainderman under the will. Both of these positions are

established as rules of interpretation because they are supposed the better to carry out the will of the testator, and both yield when a different intent is apparent from the terms of the will.

These familiar principles have been discussed and applied in numerous cases before this Court, as *In re Knowles,* 148 N. C., 461; *Holt v. Holt,* 114 N. C., 241; *Britt v. Smith,* 86 N. C., 305; *Ritch v. Morris,* 78 N. C., 377; *Tayloe v. Bond,* 45 N. C., 5; *Jones v. Simmons,* 42 N. C., 178; *Smith v. Barham,* 17 N. C., 420, and are in accord with doctrine very generally accepted here and elsewhere.

Applying the controlling principle, we think it clearly appears that the property bequeathed to the *feme* defendant under the will was impressed with a trust, and the same is to be held, managed and controlled, and the net income therefrom paid to her during her life, and the corpus of the fund to be delivered to those who may be entitled thereto as remaindermen under the will, to be held by the executors, while the proper care and administration of the estate requires that it remain in their hands as such, and to be then turned over to themselves as trustees to be held and dealt with and applied as stated.

This intent, in our opinion, is disclosed in each and every portion of the will that bears upon the question presented. In reference to the preferred stock, this being an investment of the proceeds arising from a sale of the principal part of the Linwood farm under item 6, and of the sum realized from the mixed fund disposed of by item 7, the meaning of the will is too plain for construction; the contrary view was not seriously urged by counsel. But as to the common stock arising from the bequest in item 4, we are of opinion that a proper consideration of that item and of the other portions of the will referring thereto and affecting its construction undoubtedly requires that the same interpretation should prevail. In the 4th item, the stock is bequeathed to the five children of the testator: the portion to his sons absolutely to them in fee, and that to the daughters, one of them the *feme* defendant, to them for life, remainder over; and, after making this disposition of the fund, the clause then proceeds:

"But should either of my said daughters die leaving no child or children or the issue of such, alive at the time of her death, then with remainder, as to share of the one so dying, to my other children, share and share alike, and the issue of such as may be dead—the issue representing their parent and taking such share as he or she would have taken, if alive—on the same *limitations* and *trusts* as hereinbefore expressed as to their own shares devised and bequeathed to them in this last will and testament."

It will thus be seen that after making the distinction between the interest of the sons and daughters by giving the daughters only an estate for life, remainder over, the testator affects the remainder with a contingent limitation, and then refers to the provision as having created a trust, "on the same limitations and trusts as hereinbefore expressed."

In item 5 provision is made for a sale of the entire property, or of the interest of either legatee, and in case of sale of any individual interest the vendor is required to give the others the option of purchasing at a "fair and *bona fide* price before selling out of the family"; and whether the entire property, or an individual interest, is sold, the share of the daughters is to be received by the executors and the proceeds invested in trust to pay the annual interest on each one's share during her natural life, and then over, etc., and with the remainder affected by like limitations, as in item 4, and expressed as follows:

"But should either of my said daughters die leaving no child or children or the issue of such, alive at the time of her death, then the share of the one so dying in trust for my other children surviving, share and share alike, and the issue of such as may be dead—the issue representing their parent and taking such share as he or she would have taken, if alive—on the same limitations and trusts as hereinbefore expressed as to their own shares, devised and bequeathed to them in this last will and testament."

Again, in item 6, which deals with the Linwood farm, the same is devised to his five children, "the shares of the sons to them and their heirs in fee, and the shares of the daughters on same limitations and trusts as hereinbefore expressed as to their shares in the devise and bequests to them contained in items 4 and 5, etc." The executors are then empowered, in their discretion, to sell said farm and divide out the proceeds and pay over the same, "except as to the shares therein of the daughters, which they shall invest and hold in trust for them for life, with remainder as expressed in regard to the purchase money bequeathed in item 5," etc.

And in item 7, disposing of miscellaneous property, "the shares of the daughters are to be held under the same *limitations* and *trusts* as hereinbefore set out in items 4 and 5 of this last will and testament."

Further, in the codicil of 26 January, 1892, in giving the *feme* defendant 126 shares of stock in the Granite Manufacturing Company, to make her equal with his other children in the amounts received by them, the testator is careful to state that

the bequest is to the legatee for life, remainder, "as stated in item 4 of my last will and testament, and in the same limitations and trusts as expressed as to her share as to the bequest to her in said item 4."

It will thus appear that whenever the testator refers to the share bequeathed to his daughters, either in the will or codicils, he speaks of it as a trust; and, finally, in the selection of his executors he appoints them as executors "and as trustees to carry out and perform the trusts hereinbefore declared." The interpretation we have given is confirmed, if confirmation is necessary, by the consideration that ownership and control on the part of the trustees is reasonably required for the sale and transfer and reinvestment of the fund as contemplated in item 5, and for the preservation of the same for the benefit of the remaindermen who may be eventually entitled under the provisions of the different items of the will.

The disposition of this case is, in fact, controlled by the decision of the Court in *Haywood v. Trust Co.*, 149 N. C., 208; that being a case construing a will in which the expressions favoring a trust are much less pronounced than in the one before us. The same authority is also to the effect that, when the proper administration and well ordering of the estate permits, and the executors are ready to settle as such, it is their right and duty to turn the property affected by the trust over to themselves as trustees, to be controlled and managed according to the provisions of the will and as the best interest of the fund may require.

In the case referred to, speaking to the questions presented, *Associate Justice Connor,* for the Court, said:

"The fact that the estate is not given to the trustees, and the 'limitations and conditions' imposed, declared in the form of specific trusts, does not affect the question. 'When it is essential to the carrying into effect the provisions of a will, a trust, by implication of law, will be decreed. Though no trust is created by the will, the Court will have regard to the intention as gathered from the entire document." Beach on Trusts, sec. 88. While it is true that to constitute a valid declaration of trust it must appear from the language used that such was the intention of the testator, and that the terms, subject-matter, beneficiaries, etc., must be so reasonably certain as to be capable of enforcement, it is equally true that specific language, declaratory of a trust, is not necessary, provided the intention is clear and the other requisites are found. It is not necessary that the title be given in express terms to the trustees. If the trust is

otherwise manifested and a trustee named, he will, by implication, take such title and estate as is necessary to enable him to execute the trust. *Smith v. Proctor,* 139 N. C., 314. In *Payne v. Sale,* 22 N. C., 455, it is held, in accordance with the authorities, both in England and this country, that, in the construction of wills, the estate given to a trustee is to continue for so long a period as is necessary to enable him to execute the trust. Looking to the entire will and the codicil, we have no doubt that it was the purpose and intention of the testator to create a trust, and that, upon the settlement of his estate by Mr. Haywood and Mr. Robertson, as executors, they should, as trustees, at once hold and invest the corpus of the residue given to his daughter to preserve for her own use and benefit, during her life, and at her death to pay over and deliver to those who may be entitled, under the 'limitations and conditions' imposed upon the estate. We should be inclined to the same opinion if he had not named trustees; but any doubt of his intention is removed by the fact that he has named plaintiffs as trustees, 'to perform and carry out the trusts therein declared." We see no difficulty in carrying out this intention. The plaintiffs, as executors, will turn over to themselves, as trustees, the estate in their hands, keep the same invested and pay over the income during her minority, to the Wachovia Loan and Trust Company, guardian, and, when she shall arrive at full age, pay over such income to her during the remainder of her life and, at her death, deliver the property to such person or persons as may be entitled under the terms and provisions of the will. It is conceded that the 'limitations and conditions' applied to the estate do not apply to the excess of the income, that being given absolutely to Louise M. Holt."

Having expressed the opinion that the will creates a trust as to the property bequeathed to the daughters under item 4, it is not necessary to determine whether the consolidation of the different corporations and the substitution of stock therein amounts to a sale of the property, so as to bring the proceeds directly under the provisions of item 5, and we have purposely refrained from deciding the question.

Section 1186 of Revisal, to which we were referred by counsel, and which provides for the voting of stock in a corporation by life tenants, does not affect the question. This is merely a statutory provision for the government and well ordering of corporations, and applying to life tenants who are owners of stock as such and without qualification. Having decided that this stock is to be held and controlled by the trustees, section 1185

of Revisal is the section controlling the matter, the section which provides for the voting of stock by administrators, guardians and trustees.

There is no error in the judgment of the court, and same is Affirmed.

WALKER, J., did not sit.