## FRANCIS HODGE *v.* MADISON HODGE.

The Probate Court has exclusive original jurisdiction of Special Pro-
ceedings to recover legacies and distributive shares:

This rule is subject to the exception, that when the assent of the execu-
tor amounts to an express or implied promise to pay a legacy or dis-
tributive share, it becomes a debt, recoverable like any other debt, in
the Superior Court.

Although it is a general rule that the assent of the executor to the first
taker of a legacy, limited over on a particular estate by way of re-
mainder, or executory bequest, is an assent to all persons in remainder,
yet such assent cannot be construed into a promise on the pa t of the
executor to pay the legacy a second time to the remainderman, when
he has once paid it to the first legatee.

The Superior Court did not acquire original jurisdiction of actions to
recover legacies by the passage of the Act of 1872–'73, entitled "An
Act to cure defects in certain judicial proceedings arising from mis-
takes of jurisdiction and other causes."

Where personal chattels are limited to one for life, with a limitation
over, the first legatee cannot be compelled to give security for the de-
livery of such chattels to the remainderman, after the determination
of his life estate, and an executor commits no *devastavit* in paying
such legacy to the first legatee without security.

(The cases of *Miller* v. *Reams*, 65 N. C. Rep. 67; *Williams* v. *Cotton*, 3
Jones Eq. 395; *Camp* v. *Smith*, 68 N. C. Rep. 537.)

CIVIL ACTION for the recovery of a legacy, tried before
*Watts, J.,* at Fall Term, 1873, WAKE Superior Court.

The plaintiff, in his complaint, alleged that by the will of
William T. Hodge, the sum of twelve hundred and fifty dollars
was given to the use and benefit of Henderson A Hodge for
life, and then to the use and benefit of the plaintiff for life,
and then to be divided between all the children of Henderson
A. Hodge; that by said will the defendant, Madison C. Hodge,
and Henderson A. Hodge were appointed his executors and
duly qualified as such; that the defendant collected the money
of the estate and had the absolute control thereof; that the

defendant assented to said legacy and paid over said sum to Henderson A. Hodge, his co-executor, and also the husband of plaintiff, without requiring of him any security.

Plaintiff further alleged that Henderson A. Hodge died on the 17th of September, 1870, insolvent, and plaintiff qualified as his executrix; that the sum of $142.62 had been paid for his estate towards said legacy, and but little, if anything more can be expected from this source.

The defendant demurred to the complaint, insisting that the Superior Court had no original jurisdiction thereof, because the action was brought against the defendant as surviving executor of the last will and testament of W. T. Hodge, to recover a legacy given the plaintiff for life by said last will and testament, and the summons therein made returnable, and the complaint therein filed before the Judge of the Superior Court, sitting in term time, whereas the summons should have been made returnable before, and the complaint filed in the Probate Court.

His Honor overruled the demurrer to the jurisdiction, and ordered the defendant to answer, whereupon the defendant appealed.

*Haywood*, for the appellant.
*Fowle*, contra.

SETTLE, J. This is an action to recover a legacy, made returnable before the Court at the regular Fall Term, 1873.

There is a demurrer to the jurisdiction. The Probate Court has exclusive original jurisdiction of special proceedings to recover legacies and distributive shares.

This rule is subject to the exception, that when the assent of the executor amounts to an express or implied promise to pay a legacy or distributive share, it becomes a debt, recoverable like any other debt in the Superior Court. *Miller* v. *Barnes*, 65 N. C. Rep. 67.

And while it is a general rule that the assent of the executor

to the first taker of a legacy, limited over on a particular estate, by way of remainder or executory bequest, is an assent to all persons in remander; yet such assent cannot be construed to amount to a promise on the part of the executor to pay the legacy a second time to the remainderman, when he has once paid it to the first legatee.

Since then there was no promise which would take this case out of the general rule, the jurisdiction remains with the Probate Court, unless the want of jurisdiction in the Superior Court is cured by the act of 1872–'73, chap. 187, entitled " An act to cure defects in certain judicial proceedings arising from mistakes of jurisdiction and other causes," ratified the 3d day of March, 1873. This action was instituted subsequent to the passage of the act just cited, which only professed to cure past defects in the manner of bringing suits.

But Battle's Revisal, chap. 17, secs. 425 and 426, brings forward this act, and as the Revisal went into operation since the commencement of this action, the question arises, what effect is to be given to the fact that it brings forward the curative act? As no portion of the Revisal, except the 121st chapter, was ever read and enacted by the General Assembly, as prescribed by the Constitution, it cannot be pretended that any of the enactments therein found, except the 121st chapter, derive any force and effect from the Revisal, but they all depend upon the original acts which put them in force; and, at this term we have held, in the *State* v. *Cunningham*, that a very limited operation is to be given to the repealing clause of the 121st chapter. We conclude that the Revisal, though a very useful and convenient collection and compilation of the public statute law of the State, enacts nothing, and repeals but little of the public law heretofore in force. So much for the question of jurisdiction, which is sufficient to dispose of this appeal; but since we have heard full argument upon the merits, we will, in order to end litigation, decide the main question at issue.

Was the defendant guilty of a *devastavit* in paying the pe-

cuniary legacy to Henderson A. Hodge, without security for its safety, and is he liable to pay it a second time, to the plaintiff, who is the widow of the said Henderson, and entitled under the will, after the death of the said Henderson, to the use and benefit of the legacy, for her life?

An executor is not a trustee, in the technical meaning of that term, and as it is the policy of the law to induce persons to accept the offices of executor and administrator, the Courts, while guarding against an abuse of their trusts, are extremely liberal in making possible allowance, and are cautious not to hold executors and administrators liable on slight grounds. 2 *Wm's.* on Ex'rs. p. 1630.

They are not governed by the rigid rules which apply to trustees in the more defined acceptation of that term. As to personal chattels the rule is well established that where they are given to one for life, with remainder over to another, the first legatee will be entitled to the possession of the goods, upon securing and delivering to the executor an inventory of them admitting their receipt, and expressing that he is entitled to them for life, and that afterwards they belong to the person in remainder. Formerly the tenant for life was required to give security for the protection of the remainder man, but such security is not now required, unless a case of danger is shown. In *Williams* v. *Cotton*, 3 Jones, Eq. 395, this Court after affirming this general rule, says: " The same rule, we think, must apply to the money legacies; and all that the executor can be required to do, is to take a receipt from the legatees, or from their guardians, if they be minors, for the articles or *money* delivered or paid to them, for the benefit of those who may, upon the happening of the contingency mentioned in the will, become entitled to it.

And it is said in the same case, " the executor, after giving his assent, will have nothing more to do with the property, and it will be left with the person, having such executory and contingent interest, to apply to the Court for its protective aid,

whenever the property is really in danger of being removed, wasted or destroyed."

In *Camp* v. *Smith*, 68 N. C. Rep. 537, the testator bequeathed as follows: " To my three daughters, Martha Jane, Mariana C. and Lucy Camp, each, three thousand dollars in money or bonds; and in the event of the death of either one or any of my said daughters without lawful issue, it is my will that her or their legacy shall be equally divided and heired by the survivor of my four daughters now single." The plaintiff Martha Jane, who had never married, demanded immediate payment of her legacy. The executor contended that she was only entitled to receive the annual interest of the legacy during her life, and that the principal must remain in his hands to await the contingency of her dying without issue. This Court held that she was entitled to receive the *corpus* of the legacy, and that its ultimate devolution was a question between her and the contingent remaindermen. These decisions are fully sustained by Roper, who, in discussing the time at which legacies are to be paid, when the bequest is of a gross sum of money, says : " When a legacy given generally, so as to fall within the above mentioned rule, is subject to a limitation over upon a subsequent event, the divesting contingency will not prevent the legatee from receiving his legacy, at the end of the year after the testator's death ; and he is under no obligation to give security for re-payment of the money, in case the event shall happen."

The principle seems to be that, as the testator has entrusted him with the money without requiring a security, no person has authority to require it. Our conclusion is that the defendant having once paid the legacy to the first legatee for life, he is not now liable to pay it a second time to the plaintiff or to any person in remainder.

The judgment of the Superior Court is reversed.

PER CURIAM.                              Judgment reversed.