JAMES T, RITCH and wife and others v. J. R. MORRIS and J. N. D. WILSON, Executors.

*Will—Construction of—Bequest of Personal Property for Life with Remainder Over.*

1. Where personal property is bequeathed for life with remainder over and the bequest is not specific in terms and there is nothing in the will to show an intention or preference that the life tenant shall enjoy the specific property left, and in the form in which it is left, it must be converted into money as a fund to be held and applied to the benefit of all by paying the interest to the legatee for life and the principal to the remainderman.

2. A testator, by his will, bequeathed certain personal property, consisting of stock, crops, furniture, cash on hand, notes, &c., "to my daughters H and F, to them and each of them during the term of their natural life, and at the death of each to descend to the children of each, share and share alike ; my said daughters during life to use the profits arising or accruing from their estate respectively and to enure to their sole, separate and exclusive use and benefit, and at the death of each to descend as aforesaid ;" *Held*, that the executor should sell the personal property and pay over the interest on the fund so acquired (after paying debts) to the legatees annually and the principal to their children at the death of said legatees ; and further that the legatees were entitled to an account in order that the fund might be definitely ascertained.

(*Smith* v. *Barham*, 2 Dev. Eq. 420 ; *Jones* v. *Simmons*, 7 Ire. Eq. 178 ; *Tayloe* v. *Bond*, Busb. Eq. 5 ; *Williams* v. *Cotten*, 3 Jones Eq. 395 ; *Chambers* v. *Bumpass*, 72 N. C. 429 ; *Hodge* v. *Hodge*, Ibid. 616 ; *Camp* v. *Smith*, 68 N. C. 537, cited, distinguished and approved.)

CONSTRUCTION of a Will, heard at Spring Term, 1875, of CABARRUS Superior Court, before *Schenck, J.*

Ezekiel Johnston, late of Cabarrus County, died in the month of July, 1874, leaving a last will and testament which was duly admitted to probate. The defendants were appointed executors, and after qualifying as such, they assumed the execution of the trust reposed by the will, the two items of which bearing upon the question decided by this Court, are embodied in the opinion delivered by Mr. Justice BYNUM. The plaintiffs contended that they were entitled to an account to ascertain the principal of the sum alleged to be due them, out of that portion of the testator's estate to which they were entitled as legatees for life, and to have the same paid over to them with the accrued interest; but the defendants insisted that they were not entitled to the principal of the legacies, but only to the interest and profits arising therefrom, and that the language of the will by a proper construction applied to the personal and real estate alike,—it being the intention of the testator that the plaintiffs should only have the use of the realty for life ; and that only the interest accruing from the legacies should be paid to them during their lives.

His Honor held that it was the duty of the executors to sell the personal property and pay over the interest on the fund so acquired (after paying debts) to the legatees for life, annually, and the principal to the children at the death of said legatees; and as to the land devised, the Court held that Mary Howie (now Ritch) and Martha Fuqua were entitled to a life estate, and to the possession and use thereof during their lives. From which ruling the plaintiffs appealed.

*Messrs. Wilson & Son, C. Dowd* and *P. B. Means,* for plaintiffs.

*Mr. W. J. Montgomery,* for defendants.

BYNUM, J. After a bequest of five hundred dollars to a grandson, to be paid out of his personal estate, the testator proceeds thus: "Item 9. I give and bequeath and direct to be divided as follows, (subject to the payment of debts and incidental expenses of administration) to-wit, to my grand-daughter William Eliza Johnston, one half of the undivided fourth part, and the residue I direct to be divided into three equal parts, one of which I bequeath to my daughter, Mary Howie, one to my daughter, Martha Fuqua, and the remaining third to the children of my deceased son, Zebulon Johnston.

"Item 10. The estate I have herein devised and bequeathed to my daughters, Mary Howie and Martha Fuqua, I give to them and each of them, during the term of their natural life and at the death of each, to descend to the children of each, share and share alike,—my said daughters during life to use the profits arising or accruing from their estate respectively and to enure to their sole and separate and exclusive use and benefit, and at the death of each to descend as aforesaid."

The estate disposed of by the 9th item of the will consisted of horses, mules, cattle, farming tools, crops on hand and household furniture, of the value of three thousand dollars; and of cash on hand, notes and bonds of the value of fifteen thousand dollars.

The question presented is whether Mary Howie (now Ritch) and Martha Fuqua, the legatees for life, are entitled to the possession of the personal estate so limited to them for life and then to their children. As no appeal was taken from the decision of the Court below in regard to the real estate, that part of the case is out of the way.

We think *Smith* v. *Barham*, 2 Dev. Eq. 420, is decisive of the question made here. There, the testator by his will directed his debts to be paid, and the residue with all the lands he should die possessed of, he "lent to his wife, Mary,

during life," repeating that by the term " residue," he meant
that whatever should remain after the payment of debts,
should go to the wife for life, and that after her death, the
residue therein lent to his wife, the land excepted, should
be divided among his children and grand children. The
testator had twenty slaves which formed part of the residue,
and also a large growing crop, provisions on hand, a val-
uable stock of horses and cattle, hogs, farming utensils and
household furniture. It was held that the residue given
for life with remainder over, must be sold by the executor,
and the interest paid to the legatee for life, and the principal
to those in remainder, as this was the only mode of giving
both sets of legatees, the life tenants and the remaindermen,
the enjoyment of their chattels which are perishable.

*Smith* v. *Barham*, is approved in the subsequent case of
*Jones* v. *Simmons*, 7 Ire. Eq. 178. There, Martha Corlew
by will gave to the defendant's testatrix, subject to the pay-
ment of debts, an estate for life in land, and " all her other
property, be it of what kind or nature soever, not herein-
after disposed of, and at her death to be equally divided
between the children of Celia Jones." The executor deliv-
ered the property, consisting of furniture, farming tools,
stock, &c., to the life tenant, by whom it was consumed, worn
out or destroyed. It was held that the remaindermen had
a clear equity against the executor for compensation on ac-
count of this breach of trust, in not selling and paying over
the interest to the tenant and holding the principal for the
ulterior legatees.

This case was followed by *Tayloe* v. *Bond*, Busb. Eq. 5.
There, the testator, Bond, gave to his sister, Mary Ashburn,
an estate for life, in the land upon which he lived, with
" the use for her natural life, of a sufficiency of household
and kitchen furniture, of my stock of hogs, cattle, sheep
and horses, and my negroes to support her. These articles
are to be for her life only." The executors delivered the

property to the life tenant, and the question was made, whether by a proper construction of the will, they could do so. It was held that they could, and that after the allotment and delivery, they had nothing more to do with it, but that the remaindermen, if it should thereafter become necessary, might take measures to prevent the removal or destruction of such of it, as was not of a nature to be consumel by the use. But this decision was put expressly upon the distinction between this case and *Smith* v. *Barham* and *Jones* v. *Simmons, supra.* " In these last cases," say the Court, " a mixed and indiscriminate fund is given .as a *residue* to one for life with a limitation over; and it is settled to be the duty of the executors in such cases, to sell the property and pay the interest to the first taker during life, keeping the principal for him to whom it is limited over, on the ground that this is the only mode in which the latter can be let into a fair participation of the testator's bounty. This case differs in many particulars and stands on its own particular circumstances; First, the fund though mixed, is to be designated and allotted by the executors; thus a specific nature is impressed on it, so as to distinguish it from a mere residue. Second, there is no limitation over, but the interest in such of the property as remains on hand .at the death of the first taker, not being consumed by the use, is left to fall into the residue. Third, the very object of the gift is that Mrs. Ashburn may be supported by the *use of the property.* This object would be defeated by a sale."

Succeeding *Tayloe* v. *Bond*, came *Williams* v. *Cotten*, 3 Jones Eq. 395, which is mainly relied on by the plaintiffs' -counsel. There, Margaret Cotten, by her will, gave to Frederick R. Cotten, a negro slave named Prince; and to Eliza H. Thompson, a negro woman, named Sabina and all her children. She then bequeaths as follows: 5th. " All the residue of my estate, I give in the following manner, viz; To my son Frederick R. Cotten, one share; to my

grand daughter, Eliza H. Thompson, one share," &c. 6th. "Should Eliza H. Thompson die without issue, that is, a child or children, then and in that case, I give all the property bequeathed to her above, of every description, to my son, Frederick R. Cotten, one share," &c. The property consisted chiefly of money. It was held to be the duty of the executors to assent to the legacies and deliver the articles and money to the life tenants. But this was put upon two grounds clearly distinguishing this case from *Smith v. Barham* and *Jones* v. *Simmons.* First, because it appeared to be the intention of the testatrix, that the legatees for life should have the use of certain articles of a specified nature. As for instance, to some of the legatees for life, negroes and other articles were given specifically; and to others, pecuniary legacies only were given; but the limitations over, were applied by the testatrix to each of the legatees, and to both species of legacies. It was therefore the duty of the executors to assent to the legacies of the slaves and other specified chattels; and it was held that the same rule must be applied to the money legacies. Second, because the property was given to the legatees absolutely, with an executory bequest over, upon a specified contingency, to-wit, the failure of children, which made the reason for delivering it to the first taker much stronger, his interest being greater and that of the ulterior limitee more remote and uncertain. But in this case the rule is re-iterated by the Court, " that if a mixed and indiscriminate fund of goods and other things is given as a *residue* to one for life and then over, is is the duty of the executor to sell and pay the interest to the first taker for life, keeping the principal for the remaindermen."

The counsel for the plaintiffs has referred us to two other and later cases, in support of the claim of the life tenants, to-wit, *Chambers* v. *Bumpass*, 72 N. C. 429, and *Hodge* v. *Hodge*, 72 N. C. 616. In the first of these cases, John A.

Bailey, after directing his debts and funeral expenses to be paid, proceeds in his will as follows: "I leave to Elizabeth T. Chambers, my dear and near friend, all the residue of my estate, both real and personal, during her natural life or single state, and at the termination of either, I then desire all my property to be equally divided between, &c., share and share alike."

It was held that the legatee for life was entitled to the possession of the property; but the decision is put upon the ground that it was the intention of the testator that the first taker should enjoy the use of his house, furniture, farming utensils, specifically, and not that she should have the interest on what they would sell for, and upon the further ground that the life tenant was not a residuary legatee, but a *universal* legatee, which distinguished this case from *Smith* v. *Barham,* and that class of decisions.

In the last case cited, *Hodge* v. *Hodge,* 72 N. C. 616, William T. Hodge, by will, gave twelve hundred and fifty dollars to the use and benefit of Francis Hodge for life, then to the use and benefit of Henderson Hodge for life, and then to be divided between the children of Henderson Hodge. It was held that the executor did not commit a *devastavit* by paying the legacy to the legatee for life. But this and the similar case of *Camp* v. *Smith,* 68 N. C. 537, decided the same way, were not cases of the bequest of a *residuary* estate at all, or of a mixed and indiscriminate fund of goods and other things, but of the bequest of specific sums of money, where the intent evidently was, that the life tenant should have the use of the specified sums, and where the remaindermen could, upon a proper case, restrain the first taker from consuming or destroying the principal. There being no bequest of a general residue for life, these latter cases have no application, and *Smith* y. *Barham* stands unopposed by any of the cases we have reviewed; and the rule of construction there announced, must be re-

ceived as the settled doctrine in this State. But our case is much stronger against the claim of the legatees for life. The residue is not "lent to his wife Mary, during life," as in *Smith* v. *Barham,* nor is the "use of" the property given to the legatee for life, as in *Tayloe* v. *Bond*; but the bequest here is "to my said daughters during life, to use the *profits* arising or accruing therefrom," making an evident distinction, if a distinction was necessary to show his intent, between the use of the *thing* itself and the use of the *profits* arising from it. So that, apart from the rule of construction, which obtains in the absence of a contrary intent appearing, the intention of the testator is manifest, that the life tenants are not to have the property itself, but only the interest or profits of it, during life, and the remaindermen are to have the principal.

The purpose of the testator here to benefit the remaindermen would be in a great measure defeated, if the legatees for life were entitled to the possession of the property. A large portion of it is perishable. A gift of things *quæ ipso usu consumuntur* if construed as a specific legacy carrying the possession to the life tenant, would amount in fact to an absolute gift; for so much thereof as may be consumed in the using is gone forever without compensation to the remaindermen. To prevent this injustice, and to carry into effect the will of the testator, it has become the general rule of the English Courts of Equity, and the same rule prevails in this State, that where personal property is bequeathed for life with remainder over, and the bequest is not specific in terms, and there is nothing in the will to show an intention or preference that the life tenant shall enjoy the specific property left, and in the form in which it is left, it must be converted into money as a fund to be held and applied for the benefit of all by paying the interest to the legatee for life and the principal to the remainderman. 1 Williams Exr's. 1259; 2 Williams Exr's. 1058.; *Howe* v.

*Lord Dartmouth*, 7 Ves. 137 , *Morgan* v. *Morgan*, 14 Beav. 72; *Randall* v. *Russell*, 3 Meriv. 194 ; Redf. on Wills, Part II, ch. 13, § 49. The judgment of the Court below will be affirmed as far as it goes, but it does not extend far enough. The plaintiffs are entitled to an account of the residue of the estate so bequeathed, in order that the amount of the fund, the interest of which they are entitled to for life, may be definitely ascertained. His Honor held that the plaintiffs were entitled to the possession and profits of the real estate, but we are not prepared to say with him, that the plaintiffs are entitled only to a life estate instead of a fee simple in the lands. But that question does not now arise and is not decided by us. With the modification specified, the judgment is affirmed and the case remanded to be further proceeded in, in accordance with this opinion. Costs to be paid out of the principal of the fund.

PER CURIAM. Judgment modified and affirmed.