when he made the investments stated, to create in his wife a right of survivorship.

It follows that neither the bond and mortgage nor the certificate of deposit is liable to any tax. Even if there had been no evidence at all as to the sources from which the money came which is now reflected in these securities, I feel that under the form of investments and under the law as enunciated in Matter of Thompson, supra, the same result would obtain.

The order appealed from is reversed, and the report is remitted to the appraiser for correction as indicated.

Order reversed, and report remitted to appraiser.

---

(91 Misc. Rep. 656)

### In re SCHRIEVER'S ESTATE.

(Surrogate's Court, Rockland County. September, 1915.)

1. WILLS ⬿625—CONSTRUCTION—ESTATE IN REMAINDER—INTESTACY.

The first clause of a will provided: "I give * * * to my wife the income of all my * * * estate while she remains my widow. Should she remarry I want my estate to be divided" as provided in subsequent clauses. One of the subsequent clauses provided: "The remainder of my * * * estate, whatever it may be, I * * * bequeath to my son, * * * said sum to be regulated by the first clause." Held, that the subsequent bequests were to take effect only in the event of the widow's remarriage, and would be defeated by her death without remarriage.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1447–1451; Dec. Dig. ⬿625.]

2. WILLS ⬿462—CONSTRUCTION—SUPPLYING OMITTED WORDS.

The words "upon her death or," or similar words, could not by judicial construction be inserted in such will before the words "should she remarry"; the court having no power to make a new will, or import into a will a new provision.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 981; Dec. Dig. ⬿462.]

3. WILLS ⬿455—CONSTRUCTION—LANGUAGE USED.

Where testator's meaning and intent appear clear, and the plain and definite purposes of the will are endangered by inaccurate modes of expression, the language used may be subordinated to the intention, and the court may reject, supply, or transpose words to get at the correct meaning.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 972, 973, 976; Dec. Dig. ⬿455.]

4. WILLS ⬿104—FORMAL REQUISITES—INTENTION OF TESTATOR.

A will need not be framed in a particular or set phrase, but must at least be so plain as to give a tangible clue to testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 242; Dec. Dig. ⬿104.]

5. WILLS ⬿634—CONSTRUCTION—ESTATE IN REMAINDER—GENERAL RESIDUARY CLAUSE—"SUM"—"REMAINDER."

Under the provision in such will that "the remainder of my * * * estate, whatever it may be, I * * * bequeath to my son * * * or his heirs forever, said sum to be regulated by the first clause" of the will, the son will take the estate in remainder, however it may arise, whether

on remarriage of testator's widow, as provided in the first clause, or on her death unmarried, for which no provision was made; the word "some" evidently referring to the word "remainder," and being used synonymously, though inappropriately, to express the same meaning.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510, Dec. ☞634.

For other definitions, see Words and Phrases, First and Second Series, Remainder; Sum.]

6. WILLS ☞647—CONSTRUCTION—FORFEITURE OF BEQUEST—REMARRIAGE OF WIDOW.

Under a will giving testator's widow the income of his estate while she remained his widow, and providing that, should she remarry, the estate should go to testator's son, and providing, also, that she should take whatever the law allowed her in lieu of dower, the widow in the event of her remarriage would forfeit her right to the income from the estate and all other rights therein, except her right of dower in the realty.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1533–1538; Dec. Dig. ☞647.]

7. WILLS ☞647—FORFEITURE BY MARRIAGE—DOWER—REMAINDERMAN.

Where a widow by remarriage forfeits her rights to testator's estate, except her right of dower in the realty, the dower may be released to the remainderman on payment of a reasonable consideration therefor, but otherwise must be set off to her as provided by statute.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1533–1538; Dec. Dig. ☞647.]

8. WILLS ☞693—POWER OF SALE—TERMINATION.

A power to sell realty, given by a will to testator's widow and executor, will terminate on the widow's remarriage, where the will specifies that on her remarriage she shall forfeit all her rights in the estate, except her right of dower in the realty.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1655–1661; Dec. Dig. ☞693.]

In the matter of the estate of John H. Schriever, deceased. Proceeding for construction of a will. Will construed in opinion.

Patterson & Brinckerhoff, of New York City, for petitioner.

Lewis M. Johnson, of New York City (Frank Comesky, of Nyack, of counsel), for executor and residuary legatee.

Frank W. Arnold, of New York City, for legatee.

McCAULEY, S. This proceeding was brought in accordance with the provisions of section 2615 of the Code of Civil Procedure to obtain a judicial determination as to the validity, construction, and effect of certain clauses of the last will and testament of John H. Schriever, deceased, which was admitted to probate by this court February 24, 1910. The will bears date and was executed May 23, 1899. The testator died January 20, 1910, leaving an estate, consisting of real and personal property, valued at $39,000. His wife, Katherine, survived him, and she is still living and unmarried. He left two children, Annie E. McElroy, a daughter and contingently a legatee, by whom this proceeding was instituted, and Henry J. Schriever, a son, who is the residuary legatee and executor named in the will. These children are the testator's only heirs at law and next of kin.

The daughter's marriage without her father's consent and in opposition to his wishes hastened the preparation and execution of the will, and brought about her practical disinheritance. The testator, as if to emphasize his displeasure and disapproval of the marriage, and the influence which it exerted in the disposition of his estate, annexed to the will, at the time of its execution, a telegram which he had received a few days before announcing the marriage.

The will, though inartificially drawn, was properly executed and attested. The draftsman whom the testator commissioned to prepare it was a layman, who evidently was without experience in the preparation of legal instruments. He used a printed form, filling in the material provisions of the will. These provisions are not expressed in apt or appropriate language, and are to some extent ambiguous, uncertain, and doubtful. It may, in truth, be said that the draftsman not only failed to bestow upon his work the thought and care which it merited, but that he was negligent and careless in its performance. The printed form being on one page, and not affording sufficient space to enable the draftsman to write in all the testamentary provisions, the major portion of them was written on the back of the blank, each page being numbered. We omit the formal parts of the will and reproduce only the items which we are asked to construe.

"Page (1) one.

"First: After my lawful debts are paid, I give & bequeath to my wife the income of all my real & personal estate while she remains my widow, should she remarry I want my estate to be divided as follows, as written & mentioned on page 2 of this will. * * *

"I hereby appoint my son Henry J. Schriever of New York City to be executor of this my last will and testament, hereby revoking all former wills.

"Page (2) two.

"To my widow whatever the law allows her, in lieu of dower, & remainder to be divided as hereafter mentioned.

"(1st) I bequeath to my wife & executor power to sell whatever real estate I may own at the time of my death if they deem it to advantage.

"(2d) I bequeath to my daughter Annie C. Fifty dollars, ($50) my said daughter having married without my consent. I therefore give her the above small amount should my daughter die before the settlement of my will I bequeath said amount of ($50) Fifty dollars to my son & executor.

"(3d) I bequeath to my nephew John H. Schriever son of my brother Herman in Attwistedt Germany the sum of Five thousand ($5000) dollars, if said nephew should die before my estate should be settled said sum of Five thousand (5000) dollars should go to my son & executor.

"(4th) I bequeath to my Brother-in-law Diederick Hinck the sum of twenty five hundred (2500) dollars, should said Hinck die before the settlement of my will, said sum of twenty five hundred dollars I bequeath to my son & executor.

"(5th) The remainder of my real & personal estate whatever it may be, I will & bequeath to my son & executor, or his heirs forever, said sum to be regulated by the first clause of my said will & testament.

"I heretofore bequeathed to my daughter the sum of Fifty dollars said small bequest was on account of marrying without my consent & knowledge, the only notice received by me was the telegram sent by her husband annexed to this will."

The widow, though cited, has not participated or appeared in the proceeding, and apparently is not interested in the controversy which has arisen between the son and daughter concerning the ultimate disposition of the estate.

The daughter's contention is that the executory bequests on page 2 are limited upon the widow's remarriage, and will not become effective unless and until that event occur; that, in the event of the widow's death, unmarried, the estate in remainder is not disposed of, and the testator must, in that event, be considered as having died intestate; and that she and her brother, as his heirs at law and next of kin, will take the remainder by inheritance, in equal shares.

The son, however, claims that the will, if reasonably and properly construed, disposes of the testator's entire estate, and, therefore, that the bequests on page 2 become effective either upon the death or the remarriage of the widow. He argues that the provisions of the will, when read and construed together, evince an intention on the part of the testator to dispose of his entire estate, not only upon the remarriage of his wife, but also upon her death, and that the words "upon her death or," or words of equivalent meaning, were ignorantly or carelessly omitted from the clause which limits the widow's estate. He insists that these or similar words shall be supplied and inserted, in construing the clause referred to, in order that the actual intention of the testator be made effective, and not defeated.

[1] Let us examine and analyze the various provisions of the will, omitting for the present, however, any reference to or discussion of the fifth item, being the residuary clause on page 2. By the first clause the wife is given the income from the entire estate, real and personal, "while she remains my widow." The widow's interest in the estate must therefore terminate upon the happening of either one of two contingencies, namely, her death or remarriage. This clause, it will be observed, in express terms disposes of the estate in remainder upon the widow's remarriage, but does not, either expressly or by implication, dispose of it upon the widow's death unmarried. The language of the clause is:

"Should she remarry, I want my estate to be divided as follows, as written and mentioned on page 2 of this will."

There is no ambiguity, doubt, or uncertainty in the language of this provision; its meaning is clear. The conclusion to be drawn from the language of this clause is that the executory bequests on page 2 are limited upon the widow's remarriage, and will not become effective unless that event occur, and that in the event of her death unmarried, a contingency for which no provision is made, the testator must be considered as having died intestate as to the estate in remainder, unless it passes to the son and residuary legatee under the fifth item.

The first paragraph on page 2, which must be read and construed in connection with and as if it were a part of the first item, which immediately precedes it, tends to show that the testator actually intended that the bequests which follow should depend upon the widow's remarriage, and not upon her death. The language of the paragraph is:

"To my widow whatever the law allows her, in lieu of dower, and *remainder to be divided as hereafter mentioned.*"

He could make no gift to the widow after death, and her right of dower would terminate upon the happening of that event. Nor do

I find anything in the context which indicates a different purpose, unless it be the expression with which the will is closed. This declaration would seem to indicate that the gift to the daughter of $50 was intended to be absolute; but it is not sufficient to override the preceding clauses, in which, as we have shown, a different purpose is clearly expressed.

[2] It may appear strange and unusual, if not, indeed, absurd, as counsel argues, that the bequests on page 2 should be made to depend solely upon the widow's remarriage; but the testator has so expressed himself, and his will is controlling. We may conjecture that through ignorance, oversight, or carelessness on the part of the testator, or the draftsman of the will, a mistake has occurred and that a material provision has been omitted; but it is not within the power of this court to correct the mistake or supply the omission. We cannot do for the testator what he has failed to do for himself. We may interpret and construe, but we cannot make a new will, or import into the one under consideration a new provision.

Counsel argues that because of the obvious purpose of the testator to deprive his daughter of any share of his estate, save the legacy of $50, we should read into the first item the words "upon her death or," or similar words, so that the bequests on page 2 shall become effective either upon the widow's death or remarriage. This in effect would amount to a revision or amendment of the will, which is not within the power of this court, and would not effectuate, but alter, the general scope and plan of the will. The views which I have expressed are in accord with the well-established rules of construction. The rule is very tersely stated in Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86-92, 69 N. E. 283, 284 (67 L. R. A. 146), where the court says:

"The duty of the court is not to make a new will or codicil to carry out some supposed, but undisclosed, purpose, but to ascertain what the testator actually intended by the language employed by him, when properly interpreted, and then to determine whether such intended provisions are valid or otherwise. The duty of the court is to interpret, not to construct; to construe the will and codicil, not to make new ones." Tilden v. Green, 130 N. Y. 29, 51, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

[3] Where the real meaning and intent of a testator in his will appears clear, and its plain and definite purposes are endangered by inaccurate modes of expression, the language may be subordinated to the intention. In such case the court may reject words and limitations, supply or transpose them, to get at the correct meaning. Phillips v. Davies, 92 N. Y. 199-204, and cases there cited.

[4] While courts have great latitude in giving effect to imperfectly expressed testamentary intentions, they have no right to make wills for testators. Although a will need not be framed in any particular or set phrase, it must at least be so plain as to furnish some tangible clue to the testator's intention. In cases where the language of wills has been inexact or ambiguous, the courts have frequently transposed or inserted words or phrases, or even left out or inserted provisions, in order to effectuate an intent that was with reasonable certainty to be gathered from the context of the whole instruments. Phillips v. Davies, supra; Pond v. Bergh, 10 Paige, 140. Courts have no power,

however, to construct a will where none has in fact been made, nor to import into a will new provisions which are designed to create a testamentary disposition which is neither expressed nor necessarily to be implied. Dreyer v. Reisman, 202 N. Y. 476, 480, 96 N. E. 90, 36 L. R. A. (N. S.) 618, citing Wager v. Wager, 96 N. Y. 164, 172. The rule is thus stated in Tilden v. Green, supra, 130 N. Y. at page 51, 28 N. E. at page 884 (14 L. R. A. 33, 27 Am. St. Rep. 487):

"At the threshold of every suit for the construction of a will lies the rule that the court must give such construction to its provisions as will effectuate the general intent of the testator as expressed in the whole instrument. It may transpose words and phrases and read its provisions in an order different from that in which they appear in the instrument, insert or leave out provisions if necessary, *but only in aid of the testator's intent and purpose. Never to devise a new scheme or to make a new will.*"

See, also, Hulbert v. Southerland, 163 App. Div. 241, 148 N. Y. Supp. 241; Eidt v. Eidt, 142 App. Div. 733–737, 127 N. Y. Supp. 680.

The court in Eidt v. Eidt, supra, 142 App. Div. 737, 127 N. Y. Supp. 680, says:

"The rule laid down in Starr v. Starr, 132 N. Y. 154 [30 N. E. 384], that 'in construing wills the court may transpose, reject, or supply words, so that it will express the intention of the testator,' does not extend so far as to allow the court to make a new will for the testator which will dispose of the property in a way not justified by any reasonable construction of the will"— citing Matter of Disney, 118 App. Div. 378, 103 N. Y. Supp. 391; Id., 190 N. Y. 128, 82 N. E. 1093; Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; Campbell v. Beaumont, 91 N. Y. 467; Tilden v. Green, supra.

[5] This brings us to a consideration of the fifth item of the will. Should this item be construed as a general residuary clause, under which the son will take the estate in remainder, whatever it may be, whether it arise upon the widow's death unmarried or upon her remarriage? We are of the opinion that the question should receive an affirmative answer, and the item treated as a general residuary clause.

If by this clause the testator intended to dispose of what remained of his estate, after payment of the preceding bequests, then the words "said sum to be regulated by the first clause of my said will and testament" are meaningless, and surplusage. We cannot suppose that these words were used without a definite purpose. They expressly refer to the first clause of the will, under which, as we have seen, a residuary estate may be created upon the happening of either one of the two contingencies. I think the testator intended to make a testamentary disposition of his entire estate, and that when he made use of these words he had them in mind and intended to provide for each of them, and to express his purpose that upon the happening of either contingency his son should take the residuum of his estate, whatever it might be, absolutely. I think that is a fair and reasonable interpretation of the language of the provision.

The word "sum" evidently refers to the word "remainder," which precedes it, and was used synonymously, though inappropriately, to express the same meaning. The court in Matter of Miner, 146 N. Y. 121, 131, 40 N. E. 788, 790, says:

"Unless a residuary bequest is circumscribed by clear expressions, and the title of a residuary legatee is narrowed by words of unmistakable import, it will be construed to perform the office that it was intended for, viz., the disposition of all the testator's estate, which remains after effectuating the previous provisions in the will, or which may be added to by lapses, invalid dispositions, or other accident. Riker v. Cornwell, 113 N. Y. 115 [20 N. E. 602]. The rule of construction requires of the court, in dealing with the language of a residuary gift which is ambiguous, that it should lean in favor of a broad rather than of a restricted construction; for thereby 'intestacy is prevented, which, it is reasonable to suppose, the testators do not contemplate.' Lamb v. Lamb, 131 N. Y. 227 [30 N. E. 133]."

See, also, Williams v. Petit, 138 App. Div. 394, 122 N. Y. Supp. 746.

The gift to the widow, in the event of her remarriage, is easily defined. She is given "whatever the law allows her in lieu of dower." Upon the testator's death she became entitled to a right of dower in his real property, which has not been admeasured or set apart to her, for the reason that she is given the income, during widowhood, of the entire estate. There is no provision in the will, however, which deprives her of this right, or puts her to an election.

[6] I think, therefore, that the fair and reasonable intendment of the provision is that the widow, in the event of her remarriage, shall forfeit her right to the income from the estate, and all other rights therein, except her right of dower in the real property. Her dower, in the event of remarriage, may be released to the remainderman upon payment of a reasonable consideration therefor; otherwise, it must be admeasured and set off to her, in accordance with the statutory provisions in such a case.

[7, 8] I think the power of sale given to the widow and executor was intended to terminate and will terminate upon the widow's remarriage. In the event, however, of a sale by the remainderman of any of the real property to which her dower right attaches before the same is admeasured or released, it will be necessary for the widow to join in the conveyance, or release her dower by a separate instrument.

My consideration of the questions involved in the interpretation of the will has led me to the following conclusions:

(1) That the testator has made a valid testamentary disposition of his entire estate;

(2) That the executory bequests on page 2 are limited upon the widow's remarriage, and will not become effective unless and until that event occur;

(3) That the estate in remainder, whatever it may be, whether it arise upon the widow's death unmarried, or upon her remarriage, will pass to the son absolutely, and without any qualification, but subject to the widow's right of dower in the real property;

(4) That the widow, in the event of remarriage, will forfeit her right to the income from the estate, but will still have a right of dower in the real property; and

(5) That the power of sale given to the widow, conjointly with the son, will terminate in the event of her remarriage.

A decree in accordance with these conclusions may be entered upon the usual notice.

Decreed accordingly.