E. K. BRYAN, EXECUTOR OF J. W. HARPER, DECEASED, v.
ELLA C. HARPER ET ALS.

(Filed 15 April, 1919.)

**Wills — Residuary Clause—Widows—Remarriage—Distribution—Children—
Trusts—Executors and Administrators.**

A devise to the widow, in the residuary clause, of an equal part, with
the named children of the testator, of his estate, altered by his codicil,
that in the event of her remarriage during the minority of the children
her share shall be equally divided among the children, gives the widow
only the proceeds or profits of her distributive share of the personalty,
to be paid by the executor named; which shall cease in the event of her
remarriage during the minority of the children. *Allen, J.,* writing the
opinion of the Court, *Brown, J.,* not sitting.

CLARK, C. J., dissenting; HOKE and WALKER, JJ., concurring in result.

APPEAL by plaintiff and defendants from *Calvert, J.,* at the February
Term, 1919, of NEW HANOVER.

This is an action instituted by the executor of John W. Harper
against certain of the beneficiaries under his will to ascertain their re-
spective interests in the estate of their testator and for instructions to
the executor, and the only question presented by the appeal is as follows:

Has the widow of John W. Harper the right under his will to have
paid over to her the share bequeathed to her, or should it be held in
trust, giving her only the income during the minority of her children,
or until such time as she might remarry during such minority?

The material parts of the will with the codicil thereto are as follows:

"I give, bequeath, and devise all of the residue of my property of
whatsoever kind and character or wheresoever situated to my wife, Ella
Chitty Harper, and my three children, Catherine, Ella, and James, each
to take a one-fourth share thereof."

The will containing this item was subsequently changed by the codicil,
a section of which is in the following words:

"In the event my wife, Ella C. Harper, shall remarry after my death,
and during the minority of either of my children by her, then the share
of my estate given to her by my said will shall be equally divided among
my three children, Catherine, Ella and James, in addition to the share
given them by my said will."

The property consists of real, personal and mixed property.

His Honor held and rendered judgment accordingly that the executor
should not pay to the widow her share of the personal estate, and that
she was only entitled to the income therefrom during the minority of the
children of the said John W. Harper and then only upon her remaining
unmarried, but that upon remaining unmarried until the youngest child
became twenty-one she was entitled to her share absolutely, and the
widow appealed.

*E. K. Bryan attorney for plaintiff.*
*W. B. Campbell attorney for Ella C. Harper.*
*Carr, Poisson & Dickson attorneys for Guardian ad litem.*

ALLEN, J. Two cases in our Reports (*Simmons v. Flemming,* 157 N. C., 390, and *Braswell v. Morehead,* 45 N. C., 28) are decisive of the appeal.

The Court said in the first of these cases, citing *Ritch v. Morris,* 78 N. C., 377, and *Britt v. Smith,* 86 N. C., 308, "The rule seems to be that whenever personal property is given, in terms amounting to a residuary bequest, to be enjoyed by persons in succession, the interpretation the court puts upon the bequest is that the persons indicated are to enjoy the same in succession; and in order to give effect to its interpretation the court, as a general rule, will direct so much of it as is of a perishable nature to be converted into money by the executor, and the interest paid to the legatee for life, and the principal to the person in remainder, but when the bequest is specific and is not of the residuum, the executor should deliver the property to the one to whom it is given for life, taking an inventory and receipt for the benefit of the remainderman," and in the second, which is approved in *Williams v. Smith,* 57 N. C., 256; *Gorden v. Lowther,* 75 N. C., 195; *Peterson v. Ferrell,* 127 N. C., 169, "Owners of executory bequests and other contingent interests stand in a position, in this respect, similar to vested remaindermen, and have a similar right to the protective jurisdiction of the court."

The bequest to Mrs. Harper is in a residuary clause, is contingent upon her remaining unmarried until the youngest child becomes twenty-one, and falls directly within these authorities.

The case of *Williams v. Cotton,* 56 N. C., 395, which contains expressions seemingly at variance with the decision in *Braswell v. Morehead,* is considered and distinguished in *Ritch v. Morris* and *In re Knowles,* 148 N. C., 461, and is shown to have rested upon the peculiar character of the property disposed of in the will then under consideration and on the language of the will.

Nor is the condition or limitation in the will, providing that the bequest to the widow be equally divided between the children of the testator in the event she shall remarry during the minority of either of the children, void as a restraint upon marriage.

"It is very generally held that conditions against the remarriage of the testator's widow are valid, whether the property be real or personal, and whether there is an immediate gift over or not; and the same is true against the remarriage of a widower." 40 Cyc., 1702, citing in support of the text decisions from the Supreme Court of the United

States and from the highest courts of twenty-four States and from the courts of England and Canada.

In the note to the Matter of Seaman, Ann. Cas., 1918 B, 1144, after discussing the proposition that a condition in general restraint of marriage is void, the editor says:

"Where, however, a condition subsequent in total restraint of marriage is imposed on the wife or the husband of the testator the courts will uphold the condition. *Daboll v. Moon,* 88 Conn., 387, Ann. Cas. 1917 B 164, 91 Atl. 646, L. R. A. 1915 A 311; *Nagle v. Hersch,* 59 Ind. App. 282, 108 N. E. 9; *Knost v. Knost,* 229 Mo. 170, 129 S. W. 665, 49 L. R. A. (N. S.) 627; *Sullivan v. Garesche,* 229 Mo. 496, 129 S. W. 949, 49 L. R. A. (N. S.) 605; Matter of Schriever, 91 Misc. 656, 155 N. Y. S. 826; *Littler v. Dielmann,* 48 Tex. Civ. App. 392, 106 S. W. 1137; *Haring v. Shelton* (Tex.) 114, S. W. 398·; *Re Allen,* 7 Dom. L. Rep., 494; *Re Lacasse,* 24 Ont. W. Rep. 300, 9 Dom. L. Rep. 831, 4 Ont. W. N. 986.

It will be noted that these authorities make no distinction between the widow and the widower, and that the wife has the same right as the husband to make her gift conditional upon remaining single.

The case of *In re Miller,* 159 N. C., 124, goes much further because there a condition attached to a devise of realty to a daughter that upon her death or marriage the estate should go to a son, was sustained as a valid conditional limitation, and commenting on this case in *Gard v. Mason,* 169 N. C., 508, the Court says that the fact that there is a limitation over upon marriage, as in this case, is "determinative," "controlling," in favor of the validity of the provision in bequests of personal estate, and "is always allowed much weight in cases of real estate."

In our opinion his Honor properly held that the widow was not entitled to have her share of the personal estate turned over to her, and the judgment is

Affirmed.

CLARK, C. J., dissenting: The will provides: "I give, bequeath and devise all the residue of my property of whatsoever kind and character, or wheresoever situated, to my wife, Ella Chitty Harper, and my three children, Catherine, Ella, and James, each to take a one-fourth share thereof."

A section in the codicil provides: "In the event my wife, Ella C. Harper, shall remarry after my death, and during the minority of either of my children by her, then the share of my estate given to her by my said will shall be equally divided among my three children, Catherine, Ella, and James, in addition to the share given them by my said will."

I cannot concur in so much of the opinion as holds that the forfeiture imposed by the codicil upon the devise above set out to the wife, should she marry before the youngest child becomes of age, is valid, because:

1. It is not necessary to pass upon the point in this case, and therefore it is *obiter* and cannot have any valid force and effect as a precedent.

2. The precedents in declaration of a sound public policy are quite uniform that while a devise to a wife "during widowhood" or "so long as she shall remain unmarried" is valid, a devise to her absolutely with a clause of forfeiture in event of her remarriage is a nullity. The difference is not a mere technicality, or an attenuated distinction, but is founded upon sound reason and public policy. *In re Miller,* 159 N. C., 123. When the devise is made to the wife with the limitation that it is during widowhood or so long as she shall remain a widow, she can make her election whether to take the devise or her dower, whichever is the larger provision, but when possibly a larger amount is devised to her absolutely, with a provision of forfeiture in case of remarriage, she will be induced to take the devise, not having at that time naturally any thoughts of remarriage. But should circumstances alter, or if she should subsequently find her affections engaged the forfeiture will then be called into existence. It is not public policy to discourage marriages, but the contrary. The authorities making the above distinction are numerous. "A gift in general restraint of marriage is void whether a gift over accompanies it or not." Schouler on Wills (2 Ed.), sec. 603 and notes; 2 Jarman Wills, sec. 45. To same purport 40 Cyc., 1699, and numerous cases there cited in notes. The distinction is made between a conditional limitation which is held valid and a forfeiture which is invalid.

That this distinction is founded upon a sense of natural justice and a sound public policy is shown by the fact that while the statutes allotting dower to the widow for her support generally restrict the allowance to her life, there has been not a single country or State which has ever been cruel enough to women, or deemed it sound public policy, to provide for the forfeiture of dower on remarriage of the widow. What has ever been considered contrary to public policy and unjust in the statute must be the same in a devise, and therefore the decisions which have held that where the devise is taken in lieu of dower any provision for forfeiture upon remarriage is invalid are in accordance with public sentiment of justice to the woman and the welfare of the State.

Restraints upon marriage are disfavored because of the tendency to restrict increase of population and encourage immorality, besides there is the injustice of the imposition upon the living of the will of the dead as a guide of conduct. This is so held in *Gard v. Mason,* 169 N. C., 508; *Watts v. Griffin,* 137 N. C., 572.

BRYAN *v.* HARPER.

There is no decision in this State contrary to what is said above. Decisions on both sides *pro and con,* as on nearly every proposition, can be found elsewhere, but no statute can be found anywhere validating a forfeiture of an estate by the widow for remarriage.

The history of the law shows that in nearly every instance discriminations against women have been created by the courts, especially by the purely judge-made law styled the "common law," and rarely by statute.

The poet of the democracy of justice and equality of opportunity and right to all, Robert Burns, said: "Man to man so oft unjust, is always so to woman." In India, where the wife was deemed entitled to existence only as an attendant and appendage of the husband, she was doomed to suttee—to be burnt alive upon the funeral pyre of the husband—till this was abolished by the British. There is but a difference in degree, not in principle, if the dead hand of the husband can reach out of the grave and can take from his widow by a clause of forfeiture the property he devised her in fee—in lieu of the dower the law gave her, without liability to forfeiture—for the offense of marrying again.

Governor Swain, in his address at Tucker Hall, said: "Four-fifths of the wills that I have had occasion to construe give to the 'dear wife' a portion of the estate, pared down to the narrowest limit that the law will allow, 'during life or widowhood.' So universal and inveterate is this phraseology that a somewhat famous parson in the county of Gates, some years ago at the funeral of her husband, poured forth a most fervent supplication that the bereaved wife might 'be blessed in her basket and her store, during life or widowhood.' "

WALKER, J., concurring: My view of this case is that the question as to the validity of the clause providing that in the case of the widow's remarriage, during the minority of the children, the estate should go to them, is directly involved, and that the opinion of the Court upon its legality is not a mere dictum. We are called upon to construe the clause and to decide that very question, as *Justice Allen* says at the outset, in the statement of the case, his language being as follows: "This is an action instituted by the executor of John W. Harper against certain of the beneficiaries under his will to ascertain their respective interests in the estate of their testator and for instructions to the executor, and the only question presented by the appeal is as follows: Has the widow of John W. Harper the right under his will to have paid over to her the share bequeathed to her, or should it be held in trust, giving her only the income during the minority of her children, or until such time as she might remarry during such minority." So that we must determine whether the fund must be held by the trustee during the widow's life or paid over to the children at the time of her marriage, if she does

remarry. This is a question of moment, and invokes our decision upon the validity of the remarriage clause. If she does marry, and the clause is valid, the executor or trustee will pay it over to the children at once, and she loses her share of the income of the fund thereafter. If she does not marry, her share does not go to the children. I can perceive no substantial difference between giving her a part of the fund during widowhood (*durante viduatate*), which may mean an estate for life (for an estate during widowhood is an estate for life, as stated by Blackstone and other writers), and giving it to her for life or until she marries, for an estate during her widowhood would necessarily mean one for life unless she remarries, in which event it would go over to others named in the will. The difference between the two expressions is in form and not in substance. Blackstone (Book 2, star page 121) says: "There are some estates for life which may determine upon future contingencies, before the life for which they are created expires. As if an estate be granted to a woman during her widowhood, or to a man until he be promoted to a benefice; in these and similar cases, whenever the contingency happens, when the widow marries or when the grantee obtains a benefice, the respective estates are absolutely determined and gone. Yet while they subsist they are reckoned estates for life, because the time for which they will endure being uncertain, they may by possibility last for life, if the contingencies upon which they are to determine do not sooner happen. And, moreover, in case an estate be granted to a man for his life, generally, it may also determine by his *civil death,* as if he enters into a monastery, whereby he is dead in law; for which reason in conveyances the grant is usually made 'for the term of a man's *natural* life,' which can only determine by his natural *death.*"